TREDWELL W. REMSEN and JAMES HANNEGAN, plaintiffs in error, *vs.* THE PEOPLE, defendants in error.

On the trial of an indictment for larceny in stealing "promissory notes," a witness testified, that the bills stolen "were of the currency ordinarily known as greenbacks." *Held* that this proof was some evidence, at least, of their genuineness, and when taken in conjunction with the further fact, to which he testified, that they were of the denomination of one hundred dollar bills of that currency, there was enough evidence, also, of the value, to sustain a conviction.

Where the judge, on such a trial, charged the jury that good character should not shield the prisoners, if from all the testimony (which of course included that upon the subject of character) the jury believed them to be guilty; that they were to consider all the evidence, and where they had a well reasoned doubt arising out of *all the testimony*, good character should protect the prisoners, and should ensure their acquittal if the jury had "any reasonable doubt arising out of the whole of the testimony;" *Held* that the charge should be all taken together, and so taken, it could not have misled the jury.

ERROR to the New York general sessions. The prisoners were indicted for grand larceny, in stealing from the person of George W. Wells, "promissory notes for the payment of money, being due and unsatisfied, and of the kind known as United States Treasury notes," of different denominations and values; "promissory notes for the payment of money; of the kind known as bank notes, being due and unsatisfied," of different denominations and values; "bank bills of banks to the jurors unknown, and

of a number and denomination to the jurors unknown, of the value of one thousand dollars;" due bills of the United States, of the kind known as fractional currency, due and unsatisfied, of different denominations and values; and coin of various kinds and denominations. On the trial, Wells testified to the stealing from his person, by the defendants, who were policemen, of his wallet, containing from $430 to $435; that there were three bills, of the denomination of $100 each, and the balance was in small bills, of sizes not remembered; that it was of the currency ordinarily known as greenbacks.

Testimony as to the previous good character of the prisoners was given. Upon that subject the recorder charged as follows: " They (the prisoners) bring evidence of previous good character, and certainly, so far as character is concerned, both these men have shown an exemplary character from childhood up, which has been vouched for by the fathers of the respective men, and by gentlemen who are well known in this community, as has been stated to you by the district attorney in his summing up; where the evidence is positive, leading you to a conviction, logically and fairly derived, of guilty, from all the testimony, the simple fact that a person possesses previous good character will be of no avail. It is only in cases where you have a well reasoned doubt, a doubt logically arrived at, arising out of all the testimony, that evidence of good character steps in, and then it becomes your duty under your oath to give a verdict in favor of the prisoner; such will be your duty on this occasion, if you have any such doubt arising out of the whole of the testimony."

The prisoners' counsel requested the court to charge,

*First.* That the evidence failed to show with sufficient certainty what was the character of the money alleged to have been stolen, to sustain a conviction of grand larceny charged in the indictment.

*Second.* That the evidence failed to show with sufficient

certainty what was the value of the money alleged to have been stolen, to sustain a conviction of grand larceny charged in the indictment.

*Third.* That good character was a fact to be considered by the jury, like every other fact in the case, no matter what the other testimony in the case might be.

The court charged the third proposition, but declined to charge the first and second.

The jury found a verdict of guilty, against both defendants.

*S. H. Stuart,* for the plaintiffs in error.

I. The evidence fails to show with sufficient certainty what was the character of the notes alleged to have been stolen, to sustain a conviction; and it also fails to show that they were of sufficient value to sustain a conviction, as charged in the indictment, where it appears that the attention of the court and of the district-attorney was called to these defects of proof, before the case was given to the jury, that they might be cured by further testimony, if it were possible to do so. The only evidence in the case, respecting the character and value of the property stolen, is in the testimony of Wells: "I had from $430 to $435; there were three one hundred dollar bills, and the balance was in small bills; I do not know the size; it was of the currency ordinarily known as greenbacks." 1. The indictment avers that a great variety of specified kinds of property was taken, and includes a large number of different promissory notes for the payment of money, due and unsatisfied, of the aggregate value of over $10,000, (also a variety of gold, silver and other coins and fractional currency,) all specifically described. The "promissory notes" which the plaintiffs are charged with stealing, are, in the indictment, divided into three classes. 1st. "Promissory notes for the payment of money being then and there due and unsatisfied, and of the kind known as United

States Treasury notes," of different denominations and values. 2d. "Promissory notes for the payment of money of the kind known as bank notes, being then and there due and unsatisfied," of different denominations and values. 3d. "Bank bills of banks to the jurors unknown, and of a number and denomination to the jurors aforesaid unknown, of the value of $1000." Promissory notes and bank bills were not the subject of larceny at common law. (*Arch. C. P.* 165. *State* v. *Tillery,* 1. *N. & Mc.* 6, 9. *Rex* v. *Watts,* 24 *E. C. L. R.* 573. *U. S.* v. *Bowen,* 2 *Cranch, C. C.* 133. *U. S.* v. *Carnot, Id.* 469.) But having been made so by statute, and this being a purely statutory lerceny, the articles stolen must be particularly described by pleading and by proof, that the court may see that the taking amounts to a larceny, at law; for if it does not appear by the pleading, and is not shown by the proof, that the property stolen is covered by the statute, no conviction can be had. (*See* 2 *R. S.* 679, § 66, 3d ed.; 2 *East P. C.* 1118; *Craven's case, Russ. & Ry.* 14, 110.) There is no evidence in this case that the prisoners took any one of any of the various kinds of articles described in the indictment. It is not enough that the jury find, generally, that a sum of money, of the value of $430, was taken, consisting of some one or more of the notes or bills described. They must be able to say, from the evidence, exactly what it was that was taken. Here, no one thing specified in the indictment is referred to in the evidence; no "promissory note" is mentioned—there is no reference to a "treasury note," or to a "bank note," or to a "bank bill." In larceny, there must be an averment of the specific article, and there must be proof relating to that article. (*Rex* v. *Forsyth, R. & R.* 274. *Rex* v. *Fry, Id.* 482. *Rex* v. *Bond,* 1 *Den. C. C.* 517.) The whole value of the property alleged in the indictment to have been stolen is over $10,000, while the whole amount proved to have been lost is less than $500. No one can say whether

any, and if any, which of the articles it was that were taken. In *Bond's case,* above cited, the prisoner was indicted for stealing seventy sovereigns, one hundred and forty half-sovereigns, and so on, enumerating all possible descriptions of coin. The evidence was, that coin of the value of seventy sovereigns had been stolen by the prisoner, but the witness was unable to state any one coin contained in the lot taken. It was objected that there was no evidence to show that the prisoner had taken any particular description of coin. In order that this question might be considered by all the judges, the court charged the jury that they could convict, if they were satisfied that the prisoner had taken a sum of money consisting of some of the coins mentioned in the indictment, although they could not say which. Upon a case reserved, the judges decided that no evidence could go to a jury respecting the whole or any part of a count, unless it clearly applies either to the whole or to some definite part of it. That in the case before them, the only construction which could be put upon the verdict, when viewed in the light of the testimony, was that the prisoner had either stolen sovereigns, or half-sovereigns, or crowns, or some other coin among the list of coins; that the mere taking was nothing, unless there was a taking of some specific coin. Baron Alderson, in delivering the judgment of the court, says: " We think this conviction wrong; the count includes all kinds of money, and must be treated exactly as if the indictment contained a series of counts, each charging one species alone; and it is clear that the jury could not find a man guilty, unless they could affirmatively say that he was guilty of stealing some definite thing described in one of the counts; and the same rule must, we think, apply if they are all included in one count. Suppose a conviction under this charge, and a subsequent indictment for stealing sovereigns. How is the prisoner to plead and prove that he has been before convicted of that offense?

All the proof he could then give, if this verdict stand, would be either that he had been convicted of stealing sovereigns, or half-sovereigns, or crowns, or some other species of coin. We think this cannot be just to a prisoner; on the other hand, if he has been convicted of the definite crime of stealing sovereigns, and acquitted of the rest of the charge, he has his future defense either on the plea of a former conviction or acquittal as to the whole charge. But on this verdict, it is impossible to say whether he is acquitted or convicted of any particular portion of this count; he is certainly not convicted of the whole." Even if it might be held that an indictment would be good which charged the stealing of a gross sum of money, stating the value in gross, yet that could not avail in this case; because here, in this particular indictment, the property is specially described, and alleged to be of several certain and particular kinds. Whatever laxity of description may or not be allowed in indictments for larceny, the rule is rigid that a description being given, it cannot be rejected as surplusage, but is matter of substance, and must be proved as laid. There are many authorities on this point, a part of which are here noted. (6 *Am. Law. Reg.* 93.) "Surplusage in an indictment consists of such matter only as is in no way essential to the description." (*See U. S.* v. *Porter*, 3 *Day*, 283.) "Averments that might have been dispensed with, *if inserted as descriptive of that which is essential*, cannot be rejected as surplusage, and no matter how unnecessary they are, they must be proved as laid." (*See also U. S.* v. *Howard*, 3 *Sumn.* 12; *Alkenbrack* v. *The People*, 1 *Denio*, 80; *Arch. C. P.* 66; *The People* v. *Jackson*, 8 *Barb.* 637; *Whar. A. C. Law*, 361; *The People* v. *Wiley*, 3 *Hill*, 194; *State* v. *Clarke*, 3 *Foster*, 429; *Commonwealth* v. *Morrill*, 8 *Cush.* 571; *State* v. *Hughes*, 1 *Swan*, 262; *Commonwealth* v. *Williams*, 2 *Cush.* 583; *State* v. *Morrison*, 24 *Miss.* 36; *Commonwealth* v. *Eastman*, 2 *Gray*, 76; *State* v. *Shoemaker*, 7 *Mo. R.* 177; *Com-*

monwealth v. *Wentz*, 1 *Ashm.* 269 ; *State* v. *Sansom*, 3 *Brev.*
5 ; *State* v. *Tootle*, 2 *Harr.* 541 ; *State* v. *Harris*, 3 *id.* 559 ;
*Commonwealth* v *Copp*, 15 *N. H. Rep.* 212 ; *Commonwealth*
v. *James*, 1 *Pick.* 376 ; *Rex* v. *Edwards*, *R. & R.* 497 ; *Rex*
v. *McDermott, Id.* 356 ; *Rex* v. *Duffin, Id.* 365 ; *U. S.* v.
*Foye*, 1 *Curtis C. C.* 362 ; *John.* v. *The State*, 24 *Miss. R.* 569.)
It follows, therefore, that the descriptive averments, that
the property stolen consisted of "promissory notes for the
payment of money then and there due and unsatisfied,"
and "promissory notes for the payment of money of the
kind known as bank notes, then and there due and un-
satisfied," are in all respects material, and the proof must
show that those things were stolen. Now the proof in
this case is, that the witness lost "three $100 bills."

The only reference in the indictment to bills, is to "bank
bills of banks to the jurors aforesaid unknown, and of a
number and denomination to the jurors unknown, of the
value of $1000." In order to bring them within the de-
scription of this averment, the evidence must show not only
that these three $100 bills were *bank* bills, were due and un-
satisfied, and that they were collectively of the precise value
of $1000. It is a rule always adhered to, that when an in-
dictment charges a larceny of articles collectively, assigning
a gross value to the lump, (as this averment about bank
bills does,) there cannot be a conviction of stealing a part
of the gross value alleged. (*Rex* v. *Forsyth, R. & R.* 274.
*Commonwealth* v. *Smith*, 1 *Mass. R.* 245. *The People* v. *Wiley*,
3 *Hill*, 194. *Wilson* v. *State*, 1 *Por.* 118. *Hope* v. *Common-
wealth*, 9 *Metc.* 134. *O'Connell* v. *Commonwealth*, 7 *id.* 460.
*Commonwealth* v. *Morrill*, 8 *Cush.* 571. *Whart. Am. C. L.*
613.) When the substance of the charge is stealing an un-
known number of promissory notes, and the gross value is
charged, the actual value must be stated, and that value
must be proved as stated. An omission to do either is fatal.
Here, the only fact of description, and the only means of
identification of the "bank bills," is the fact of value, viz.,

that they were of the value of $1000, and a variance between the proof and this description must defeat a conviction. If the parcel of bills charged to be stolen and to be of the gross value of $1000 are not proved to be of that value, then it is not that parcel to which the proof relates. Nor can it be said that the use of the term "greenbacks" by the witness, in his evidence, is a description of anything mentioned in the indictment. The property there described are "promissory notes, due and unsatisfied," and the like; and, as has been said, nothing which is descriptive of the property alleged to have been stolen, whether it be necessary or not, can be considered as surplusage, but is matter of substance, and must be proved as laid. See the authorities above cited, and also, *U. S.* v. *Clew*, 4 *Wash. C. C.* 700; *Whart.* 361, 629, 630; *Commonwealth* v. *Atwood*, 11 *Mass. R.* 93; *Commonwealth* v. *Tuck*, 20 *Pick.* 356, 364; *U. S.* v. *Lancaster*, 2 *McL.* 431; *U. S.* v. *Keen*, 1 *id.* 429; *State* v. *Noble*, 15 *Me. R.* 476; *U. S.* v. *Brown*, 3 *McL.* 233; *Rex* v. *Craven*, *R. & R.* 14; 3 *Hill, So. C. R.* 1; *Thatcher C. C.* 722. The term "greenbacks," I need hardly say, is not definite, and certainly is not confined in its use to the notes and bills embraced by the indictment, and therefore clearly cannot be accepted as proof of what the particular things stolen consisted of.

2. The evidence fails to show that the things charged to have been taken were of any value whatever. The statute determines how the value of promissory notes, &c., is to be measured. "The amount due thereon, or secured thereby and remaining unsatisfied, shall be deemed to be the value thereof." (2 *R. S.* 4*th ed.*) Although all the "notes" in the indictment are therein described as being "due and unsatisfied," there is not one word of proof that such was the fact; and, therefore, there is not one word of proof that they were of any value whatever; for unless there was something "due thereon," or "secured thereby and remaining unsatisfied," there is nothing by which

their value, as far as larceny is concerned, can be determined; for the statute says that *that* shall be their value for the purposes of a prosecution for the larceny of them. (*See The People* v. *Loomis*, 4 *Denio*, 380.) The phrase, "three $100 bills, greenbacks," is no evidence of the value of these bills or of their genuineness, or that they had ever been received or paid as genuine and valuable bills. The witness states he had $430, but that single and simple statement is no proof of the value and genuineness of the bills of which he supposed that amount to consist. The word "dollar" imparts no value, and is only a term used in computation to express a value existing somewhere else, and consisting of some particular thing. So the words "four hundred and thirty dollars," in the evidence, are meaningless, (except in an abstract sense,) and cannot be taken as proof imparting value to the unknown number of "bills" claimed to have been stolen. It was held, (*Rex* v. *Fry, R. & R.* 481,) that the words "ten pounds," in an indictment for larceny, conveyed no idea of value. See also *People* v. *Johnson*, (4 *Denio*, 364,) which is an authority conclusive upon this point. The statement of the complaining witness can be taken to mean only that he lost what purported to represent that amount, nothing more; whether it was in fact of that value, or any value, is entirely uncertain. (*Johnson* v. *The People*, 4 *Denio*, 364.)

II. This indictment is for larceny from the person. There was a general verdict of guilty. Under that verdict, had the proof shown that the amount stolen was less than twenty-five dollars, the prisoners could still have been punished as for grand larceny; they might also have been punished as for petit larceny. (*Laws of* 1860, *ch.* 508, § 33.) The Court of Appeals have expressly held, and that too on an indictment precisely similar to this, that the prisoner, in all cases where this form of indictment is used, has a right to require that the jury find whether the value proved exceeds twenty-five dollars or not. Had the court

Remsen v. The People.

charged the jury in this case in accordance with the law, and (upon the subject of value) as requested by prisoners' counsel, they would have found the exact value of the property stolen. As it is, their general verdict fixes it at $10,000, while the proof shows that it did not amount to one-twentieth part of that sum, which leaves it entirely possible that if the jury had been instructed in the law, they might have convicted the accused of petit larceny from the person, instead of grand larceny. (*See Williams* v. *The People*, 24 *N. Y. Rep.* 405.)

The view of the weight and effect of good character taken by the recorder in his charge, has been long since repudiated by the courts, both in this country and in England. "It has been usual," says Sir William Russell, "to treat the good character of the party accused as evidence to be taken into consideration only in doubtful cases. Juries have generally been told that where the facts proved are such as to satisfy their minds of the guilt of the party, character, however excellent, is no subject for their consideration; but when they entertain any doubt as to the guilt of the party, they may properly turn their attention to the good character which he has received;" (almost the words of the recorder in this case;) "it is, however, submitted that the good character of the party accused, when satisfactorily established by competent witnesses, is an ingredient which ought always to be submitted to the consideration of the jury; * * and the correct course seems to be, not in any case to withdraw it from consideration, but to leave the jury to say, from the evidence, whether an individual, whose character was previously unblemished, has, or has not, committed the crime laid to his charge." (2 *Russell on Crimes*, 785.) Sergeant Talfourd says: "According to the language used by judges in their charges, character is in no case of any value. They say that, in a clear case, character has no weight; but if the case be doubtful, if the scale hang even, then the jury ought to throw the

weight of character in the scale, and to allow it to turn the balance in favor of the prisoner. But the same judges will tell juries that, in every doubtful case, they ought to acquit, stopping far short of the even balance, and that the prisoner is entitled to the benefit of every reasonable doubt. In clear cases, therefore, character is of no avail, and in doubtful cases it is not wanted. It is never to be considered by the jury but when the jury would acquit without it. The sophism lies in the absolute division of cases into clear and doubtful, without considering character as an ingredient which may render that doubtful which would otherwise be clear." (*Dick. Quar. Sess. 6th ed.* 563.) In this country, the view taken by these learned jurists has been adopted and approved wherever the subject has been brought before the courts. In *The People* v. *Lamb,* (2 *Keyes,* 378,) the judge at the trial had charged on the subject of character; in reviewing which, the Court of Appeals say: "In so far as the charge left it (good character) to the discretion of the jury, to utterly disregard the uncontradicted evidence of the defendant's good character, (and it seems to have done so, unqualifiedly,) it was erroneous, and prejudicial to the defendant. The rule is, that such evidence must in any event be considered by the jury together with the other circumstances of the case. It is not merely of value in doubtful cases, but will of itself sometimes create a doubt where none could exist without it," &c. See also, to the same effect, *Cancemi* v. *The People,* 16 *N. Y. Rep.* 501; *Stevens* v. *The People,* 4 *Park.* 396; *Felix* v. *The State,* 18 *Ala. Rep.* 720; *State* v. *Ford,* 3 *Strobhart,* 517; *Webster's case,* 5 *Cush.* 295; 5 *Porter,* 382; *Ryan* v. *The People,* 19 *Abb. Pr. R.* 232. That this portion of the recorder's charge was "erroneous, and prejudicial to the prisoner," seems certain, and therefore is necessarily a ground for reversal of the judgment.

An erroneous charge will be reason for setting aside a verdict, unless it is shown that the error did not affect the

verdict. It is not for the party aggrieved to show how he was injured by it; it is for the people to show that no injury could possibly have arisen from the error. (*Greene v. White*, 37 *N. Y. Rep.* 405. *Clarke v. Dutcher*, 9 *Cowen*, 674. *C. and A. Railroad Co.* v. *Belknap*, 21 *Wend.* 354. *The People* v. *Wiley*, 3 *Hill*, 194. *Thatcher* v. *Jones*, 31 *Maine Rep.* 528. *Lane* v. *Crombie*, 12 *Pick.* 177. *The People* v. *Bransby*, 32 *N. Y.* 525.) If it be said that the request to charge, with the recorder's remark, "I charge your third proposition," is to be taken as a portion of the charge to the jury, it is a sufficient reply to state that the words of the request were written, and read by the counsel for the prisoners to the court; that the propositon of law therein contained was not declared by the recorder to the jury; that the attention of the jury was not called to it, either by court or counsel; that although they, or some of them, may have heard it read by the prisoners' counsel, it still was not addressed to them; that the recorder's remark in reply was directed to the counsel and not to the jury, as his words show: "I charge your third proposition;" that there was three (and it would have been the same had there been twenty) propositions contained in the request; that the recorder, in accepting and declining them, referred to them by number, and not by mentioning the matters which he approved or denied; that the jury, even had they heard them read to the court by counsel, are not supposed to recognize important legal propositions by the number which the judge uses to distinguish them from each other, (and where the series is long no one could do it, even with the strictest attention,) and that the true intendment of a request to charge is, that the judge will embody the matters contained in the request in the instructions he gives to the jury, when he commits the case to them. (*See Colquitt* v. *Thomas*, 8 *Geo. R.*) Now, if it is to be taken and understood that, in his charge to the jury, the recorder embodied this request, then I say that whether he told the

jury they must consider the question of good character like every other question in the case, or not, it is beyond contradiction that he told them that good character was of no avail, except in a doubtful case, &c., which is error equally certain, and fatal in this as in any other view of the question. But I respectfully repeat that when the recorder actually came to charge the jury, he not only did not charge this proposition, but charged, in practical effect, as absolutely contrary to its purpose and spirit as it was possible for him to do. " Where the evidence is positive, leading you to a conviction, logically and fairly derived, of guilty from all the testimony, the simple fact that a person possesses previous good character will be of no avail. It is only in doubtful cases * * * that evidence of good character steps in," &c.

*S. B. Garvin,* (dist. att'y,) for the people.

*By the Court,* CARDOZO, J. This case differs, essentially, from that of *Johnson* v. *The People,* (4 *Denio,* 364,) relied on by the prisoners. In that case there was no proof of the existence of the banks, which were foreign ones, which it was claimed had issued the notes; nor any evidence of their genuineness. Had there been any—even that the bills had been passed as genuine—and it had been left to the jury to say, upon that, whether the banks existed, and whether the notes were genuine, it is plain that the judgment would have been sustained. Here the witness testified that the bills stolen " were of the currency ordinarily known as greenbacks," a term, as applied to money, well understood. I think this proof—that these particular bills were part of that currency—is some evidence, at least, of their genuineness; and when taken in conjunction with the further fact to which he testified, that they were of the denomination of one hundred dollar bills of that currency,

Remsen *v.* The People.

there was enough evidence, also, of the value, to sustain the judgment.

Respecting the exception to the charge upon the subject of character, I think it enough to reiterate, substantially, what I said upon the motion for a stay of proceedings. The charge of the recorder should all be taken together, and I think could not have misled the jury. The recorder, in accordance with the request of the prisoners' counsel, and in the language of the request, charged "that good character is a fact to be considered by the jury, like every other fact in the case, no matter what the other testimony in the case may be." A fair examination of the charge shows that the recorder only meant to tell the jury that good character should not shield the prisoners, if from all the testimony—which of course included that upon the subject of character—the jury believed them to be guilty. That the jury were to consider all the evidence, is repeated by the recorder in several forms. He said to the jury, "where you have a well reasoned doubt arising out of *all the testimony,*" good character should protect the prisoners, and should ensure their acquittal in this case, if the jury "have any such doubt arising out of the whole testimony."

Upon the whole, I think the judgment should be affirmed.

                                    Judgment affirmed.

[First Department, General Term, June 6, 1870. *Ingraham,* P. J., and *Cardozo* and *Geo. G. Barnard,* Justices.]