THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, v. MARY WILEMAN, APPELLANT.

44  187
2ap335
44  187
26ap481
44h 187
.62ad863

*Evidence — the good character of one upon trial for a criminal offense should always be considered by the jury.*

Upon the trial of the defendant for killing her husband by administering arsenic to him, after evidence of her previous good character had been given, the court charged as follows: "Good character is sometimes the turning point in the investigation of a criminal charge. When the evidence is vague, shadowy and unsatisfactory, then it is that the evidence of good character stands the defendant in hand; then it is that it is to be considered by the jury as almost amounting to a defense. But when the evidence in the case satisfies the jury that the crime has been committed, and that the accused has committed the crime, then the evidence of good character is of no avail."

*Held*, that it was error to so charge.

*Remsen* v. *The People* (43 N. Y., 6) followed.

APPEAL from a judgment of the Cattaraugus Oyer and Terminer, convicting the defendant of the crime of murder in the first degree, and directing the execution of the sentence.

·*Hudson Ansley* and *Wm. G. Laidlaw*, for the appellant.

*G. M Rider*, district attorney, for the respondent.

BRADLEY, J.:

The indictment charges that the defendant, with the deliberate and premeditated design to effect the death of Edward Wileman, administered to him a fatal quantity of a deadly poison called arsenic,· and by that means feloniously did kill and murder him. He was the husband of the defendant. They had lived together as husband and wife for about twenty years. On Friday, the 18th day of September, 1885, he was suddenly taken sick, and died in the afternoon of the next day. He was of the age of fifty-four years at the time of his death. And the evidence tended to prove that up to the time of this illness he had usually been in good health; that on this Friday, a little after noon, he came from his work to his house to get dinner, and the defendant gave him a lunch, consisting of pumpkin pie and bread and milk, which he ate, and shortly after had a severe attack of pain and suffering in his stomach; that medical aid was called which gave him no relief and he continued in that condition until shortly before his death, which occurred about four o'clock in the afternoon of the next day. The autopsy disclosed the presence of arsenic in his stomach and liver, and the conclusion was fairly justified from the evidence, that his death was caused by arsenical poison. Whether it was taken with the food given him by the defendant for his lunch, and whether it was purposely so furnished him by her, were the questions litigated at the trial and they were fairly and properly submitted by the trial court to the jury. The burthen was with the people to establish by evidence every fact essential to the offense, and to do it by such evidence and in such manner as to exclude all reasonable doubt as to the guilt of the accused, to justify or permit her conviction. The presumption of the innocence of the defendant existed until it was completely overcome by evidence to the contrary. The means by which the poison was furnished to, or obtained by the deceased,

and the purpose with which it was supplied to, and taken by him, rested somewhat in circumstantial evidence. While on the part of the prosecution it was contended that it was purposely, by the defendant, placed in his food with a view to take his life, it was insisted on the part of the defense, that it was obtained and taken by the deceased voluntarily, without any instrumentality of the defendant, and evidence was given on her part going in support of that view of the defense.

The question of motive, and whether any existed on the part of the prisoner to take the life of the husband, therefore, was treated as an essential element in the case; and with a view to that fact, evidence was given to the effect that the husband had taken on his life a policy for $1,600, in a co-operative aid insurance society, in which she was named as the beneficiary. And some evidence was given tending to prove that some relations had grown up and existed between her and a man referred to, not consistent with her marital relations and duties. The evidence tending to prove those facts was competent and proper to go to the jury for their considerations, and whether if established, they constituted a motive on the part of the accused for the crime charged, or were sufficient for that purpose, was wholly for their determination. There was no exception taken to the charge of the court to the jury, or to any refusal to charge. But if the court is "satisfied that the verdict is against the weight of evidence or against law, or that justice requires a new trial," it may grant it whether any exception has been taken or not, in the trial court. (Code Crim. Pro., § 527.) This was the rule applicable to all appellate courts of the State in capital cases at one time. (Laws of 1855, chap. 337, § 3.) The statute does not require the reversal of conviction and the ordering a new trial for every error committed which would be available upon exception duly taken, but for such errors only as it can be seen may have prejudiced, and in the judgment of the court did prejudice the defendant. (*People* v. *McCann,* 16 N. Y., 58; *O'Brien* v. *People,* 36 *id.,* 276; *People* v. *Newton,* 3 N. Y. Crim. Rep., 406; *People* v. *Sullivan,* 4 id., 198; *People* v. *Sweeney,* 41 Hun, 343.)

It is contended by the defendant's counsel that the court erred in the charge defining the reasonable doubt applicable to the trial of criminal cases, and took from the jury the force, in an essential

degree, to which it was entitled in their consideration of the case presented by the evidence and the inferences legitimately derivable from it. The definition and explanation given by the court did not in terms embrace all the elements out of which a reasonable doubt may spring, or all the views which might enter into the consideration to produce it. It may arise out of failure of proof, or its insufficiency to exclude or overcome the legal presumption of innocence of the accused, " for it is not enough that the evidence goes to show his guilt, it must be inconsistent with the reasonable supposition of his innocence." (3 Greenl. Ev., 29.) To confine the definition of the term to such doubt as arises from the testimony given upon the trial, would be too restricted in its application, and might be construed to exclude the reasonable doubt which might arise from a want of evidence. (*Densmore* v. *State*, 67 Ind., 306; 33 Am. Rep., 96.) There was no error in the charge in this respect taken as a whole, unless it may be construed as an unqualified restriction of the term reasonable doubt, to the definition and explanation there given of it. (*Commonwealth* v. *Webster*, 5 Cush., 320; 52 Am. Dec., 711; *People* v. *Guidici*, 100 N. Y., 503.) We do not think it fairly entitled to such construction for the purposes of this review.

The court, so far as it proceeded to charge on the subject, was substantially correct, and there was evidently no purpose to exclude the presumption of innocence, and the force to which it was entitled in support of a reasonable doubt founded upon the inquiry whether the evidence as a whole was such as to overcome it, and in the judgment of the jury to require the conclusion that the facts established by the evidence were inconsistent with any hypothesis other than that of the guilt of the accused. The same degree of criticism will not necessarily be given to a proposition charged, when there is no exception, as might seem to be required if a specific exception had been taken. It evidently would have needed only a remark from counsel at the trial to have removed the ground upon which it is now sought to predicate error.

The more serious question arises upon the charge in respect to the effect which might be given to the evidence of the good character of the defendant, which was given on the trial. The court charged the jury on that subject as follows : " Good character is sometimes the

turning point in the investigation of a criminal charge.   When the evidence is vague, shadowy and unsatisfactory, then it is that the evidence of good character stands the defendant in hand, then it is that it is to be considered by the jury as almost amounting to a defense.   But when the evidence in the case satisfies the jury that the crime has been committed, and that the accused has committed the crime, then the evidence of good character is of no avail."

The further charge upon the subject does not materially modify that quoted.   There having been evidence given on the part of the defendant that her character was good up to the time of the charge in question against her, the effect of that fact as evidence was unduly qualified by the charge of the court.   The practical effect of which was that the consideration of the evidence of good character was dependent upon the effect which the other evidence, exclusive of it, had upon the minds of the jury, and to be considered only in the event the other evidence failed to satisfy them that the defendant committed the crime.   In other words, the jury were permitted to understand from the instruction given that the other evidence was first to be considered, without the aid of that of the good character of the defendant, and if that satisfied them of her guilt the evidence of her good character was of no avail.   The court may not have so intended to instruct them, but we think they were at liberty to so understand the court.   The evidence of good character of the defendant in the trial of a criminal case, is to take its place with other evidence on the part of the defense, and is entitled to consideration with it.   The force and bearing of it is wholly with the jury.   Its consideration by them is not confined to cases of doubt arising upon the evidence, but it may have the effect to aid in producing or supporting a doubt, which might not otherwise arise, if, in the judgment of the jury, it was entitled to such effect.   In *Remsen* v. *The People* (57 Barb., 324) the court charged the jury that " where the evidence is positive, leading you to a conviction logically and fairly derived, of guilty from all the testimony, the simple fact that a person possesses previous good character will be of no avail.   It is only in cases where you have a well-reasoned doubt, a doubt logically arrived at, arising out of all the testimony, that evidence of good character steps in, and then it becomes your duty, under your oath, to give a verdict in favor

of the prisoner." The prisoner was convicted. When that case came into the Court of Appeals for review (43 N. Y., 6) the court held that such charge to the jury was erroneous, and reversed the conviction, and in the opinion of the court by ALLEN, J., said: "There is no case in which the jury may not, in the exercise of a sound judgment, give a prisoner the benefit of a previous good character. No matter how conclusive the other testimony may appear to be, the character of the accused may be such as to create a doubt in the minds of the jury and lead them to believe, in view of the improbabilities, that a person of such character would be guilty of the offense charged. * * * An individual accused of crime is entitled to have it left to the jury to form their conclusion upon all the evidence whether he, if his character was previously unblemished, has or has not committed the particular crime alleged against him. The weight of the evidence is for the jury alone to determine." And the court in that case adds that evidence of good character will sometimes of itself create a doubt, when, without it, none would exist. (See, also, *People* v. *Lamb*, 2 Keyes, 360, 377, 378; *Stover* v. *People*, 56 N. Y., 315; *People* v. *Clements*, 42 Hun, 353.) It can be seen that the defendant may have been prejudiced by the instruction given to the jury, so limiting the consideration and effect to be given to the evidence, and to the fact, if so found, of her previous good character, which should have been left to the jury, like the other evidence in the case, for them to determine whether it was entitled to any and what importance and bearing upon the questions presented and upon the result to be given by their verdict. Upon this ground alone we think justice requires that a new trial should be granted. It, therefore, becomes unnecessary to consider any other question presented.

The judgment and conviction should be reversed and a new trial ordered; and for that purpose the proceedings here are remitted to the Court of Oyer and Terminer of Cattaraugus county.

SMITH, P. J., and HAIGHT, J. concurred.

Judgment and conviction reversed and a new trial ordered; and for that purpose the proceeding is remitted to the Court of Oyer and Terminer of Cattaraugus county.