## Court of Appeals.

*November*, 1885.

## PEOPLE *v.* GUIDICI.

### MURDER.—CHARGE.—WAIVER.

Errors in criminal trials can be made available in the Court of Appeals, only by exceptions duly taken on the trial.

Section 527 of the Code of Criminal Procedure, does not apply to the Court of Appeals. (Following Peeple *v.* Hovey, 1 *N. Y. Crim. Rep.* 283: People *v.* Boas, *Id.* 287; People *v.* D'Argencour, *Id.* 267.)

When defendant has permitted a deposition to be read upon a trial without objection, such objection cannot be taken in the Court of Appeals.

The court, in charging the jury, defined a reasonable doubt as follows: "It is not a mere guess or surmise that a man may not be guilty; it is such a doubt as a reasonable man may entertain after a fair review and consideration of the evidence. A doubt for which some good reason, arising from the evidence, can be given. When you find such a doubt as that in a case, it is your duty to give the prisoner the fullest and amplest benefit of it." *Held*, no error.

A general exception to a part of a charge is unavailing, if any portion of the matter objected to be well stated.

APPEAL by the defendant, Guiseppe Guidici, from a judgment of the General Term of the Supreme Court in the Second Department, of February, 1885, affirming a judgment of the Kings county Court of Sessions, Hon. HENRY A. MOORE presiding, convicting defendant of murder in the first degree.

The facts are as follows: Daghiero, the deceased, lived with his wife at the corner of President street and Hamilton avenue, Brooklyn. He was a baker by trade, as was also the defendant, and both had been employed in the same shop. Daghiero had been at work during the night preceding November 30, as was his wont, and had returned home to his wife at about seven o'clock in the morning. He went out to get something to be cooked for his breakfast, and at his door met the defendant, who was waiting for him. The defendant and he had some conversation

when Daghiero crossed to the grocer's, bought some eggs, returned to his door, where the defendant was still waiting, went up stairs and gave the eggs to his wife, saying, " You cook the eggs, and I will take the clock down stairs. Milano (referring to the defendant), is here." Daghiero went down stairs to the defendant, handed him the clock and turned into his door ; as he stepped with his left foot on the step, and with his right hand on the knob of his door, in the act of going into the doorway, the defendant came up behind him, put his hand on Daghiero's shoulder, who then turned around, looking pale, scared and white, whereupon the defendant, having already taken his revolving pistol out of the waist-band of his trousers, pointed it at Daghiero, and after a few seconds, fired a shot into Daghiero's body.   Daghiero gave a scream, staggered out to the edge of the sidewalk, caught at some barrels, and fell. His wife ran down, threw her arms about his neck, and held him up, but he died in her arms, on the street, before the ambulance arrived.   After the shooting, the defendant stood for a moment, replaced his pistol, lighted his pipe, and went along President street—down towards the avenue, and then towards the ferry, where he was arrested by officer O'Rorke.

It appeared upon the evidence that the defendant and the dead man had been fellow workmen together, that the dead man had been the defendant's " boss ;" that they had had one or two quarrels previously, and that in consequence of one dispute the proprietor of the bake-shop had discharged the defendant from employment.   It also appeared that the defendant had lent an alarm clock and a sum of money to Daghiero, amounting to nearly four dollars, and that about three weeks before this, and after his discharge, the defendant had demanded his clock and his money from Daghiero, who had said he would give it to him on the Thursday of next week, and that, on the morning in question—the Friday after that Thursday, the defendant went to Daghiero's house to demand the money and the clock.   No one heard the conversation which ensued during the two meetings on the sidewalk, but the defendant gave as his own version of it: " I told him to give me my money and my clock, because I needed it.  He said he declined to give me my money (saying), I had not the money, but the

revolver you have I will make you eat. He then went to the grocery and was away about five minutes, and came back with something in his hand for breakfast. When he came back, I said, ' Magerini, give my money and my clock.' He told me to wait until he went upstairs and came back again ; he had been two minutes away and then he came down ; he had my clock ; he says, ' there's your clock ' (chucked it at me), but he did not tell me that he did not have it (the money) ; he told me he was not going to give it to me."

*Lorenzo Ullo*, and *James G. Tighe* (*N. C. Moak*, of counsel), for defendant, appellant.—I. The court erred in charging the jury as to what entitled defendant to the benefit of a reasonable doubt. " You must understand what a reasonable doubt is. It is not a mere guess or surmise that the man may not be guilty ; it is such a doubt as a reasonable man might entertain after a fair review and consideration of the evidence. A doubt for which some good reason, arising from the evidence, can be given. When you find such a doubt as that in a case, it is your duty to give the prisoner the fullest and amplest benefit of it." This definition of reasonable doubt is not at all in accord with sections 389 and 390 of the Code of Criminal Procedure. The rules by which a reasonable doubt is to be governed are : (*a*) When the evidence is conflicting it is error for the court to refuse to charge the doctrine of reasonable doubt. *Code Crim. Proc.* §§ 389, 390 ; Spears *v.* State, 2 *Tex. App.* 244 ; May *v.* State, 6 *Tex. App.* 191 ; Mace *v.* State, 6 *Tex. App.* 470. The defendant is entitled to an instruction that "if there was a reasonable doubt in their minds as to the establishment by the evidence of any material fact necessary to convict the defendant, they should acquit him." Snyder *v.* State, 59 *Ind.* 105, 112 ; *Whart. on Homicide* [2 ed.] § 649. And a refusal to so instruct is not cured by a general instruction, that the defendant was by law presumed innocent until proved guilty beyond a reasonable doubt. Snyder *v.* State, 59 *Ind.* 105. (*b*) Where the court, in defining what is a reasonable doubt, includes something which ought not, in fairness to the prisoner, to be included, a new trial should be granted. State *v.* Johnson, 16 *Nev.* 36, 99 ; People *v.* Brown,

59 *Col.* 345 ; Anderson *v.* State, 41 *Wis.* 430. Such a charge exposes the accused to conviction on insufficient evidence. Anderson *v.* State, 41 *Wis.* 430, 433. See also Meyers *v.* Commonwealth, 83 *Penn. St.* 142. (*c*) In a criminal cause tried by a jury, the law contemplates the concurrence of twelve minds in the conclusion of guilt before a conviction can be had. Each juror must be satisfied beyond a reasonable doubt of the defendant's guilt before he can, under his oath, consent to a verdict of guilty. Castle *v.* State, 75 *Ind.* 146 ; State *v.* Sloan, 55 *Iowa,* 220. (*d*) A reasonable doubt may not only arise out of the evidence, but may be the result of a want of evidence. Massey *v.* State, 1 *Tex. Ct. App.* 564, 570 ; Densmore *v.* State, 67 *Ind.* 306, 307, 308 ; Wright *v.* State, 69 *Ind.* 163, 165 ; Batten *v.* State, 80 *Ind.* 394, 402 ; Holmes *v.* State, 9 *Tex. App.* 313. (*e*) " From this review of the authorities it will readily be seen that the language used by Greenleaf and Starkie has generally met with the approval of the courts, and is a safe rule to follow. But wherever there has been a depart· ure from it, however slight, in such a manner as to weaken the amount of proof required as to bring it within a less degree of certainty, the instructions have either been questioned or declared erroneous." State *v.* Rowe, 11 *Nev.* 348 ; Mixin *v.* State, 55 *Miss.* 527. (*f*) A reasonable doubt exists in the mind. It arises when there is a failure to convince the reason or judgment. It is immaterial whether or not the jury can give a good or any reason whatever for it. It is sufficient that it exists in the mind, and that the reason and judgment are not convinced. Arnold *v.* State, 23 *Ind.* 170 ; State *v.* Reed, 62 *Me.* 142, 143 ; Miles *v.* United States, 103 *U. S.* 304 ; Commonwealth *v.* Costley, 118 *Mass.* 16 ; People *v.* Finley, 38 *Mich.* 482 ; McGuire *v.* People, 44 *Mich.* 286 ; State *v.* Bridges, 29 *Kansas,* 138 ; *Whart. Crim. Ev.* (8th ed.) § 1 ; State *v.* Sommers, 9 *Western L. J.* 415. (*g*) Nor is it an answer to what has been said, that the aggregated common sense of the twelve jurors is to determine when a juror is " able to give some good reason " for his doubt. It is not necessary he should be able to do so, even to his own satisfaction. In Densmore *v.* State (67 *Ind.* 308), the court charged the jury that " what is commonly called common sense is perhaps the juror's best guide

in those particulars." This was held erroneous, the court saying : " Now, while common sense is a very desirable and admirable quality in man, and exceedingly useful in all the practical affairs of life, including the duties of jurors, we do not see how it can be a better guide to them in the discharge of those duties than the rules of law. Indeed, the rules of law are generally the condensed common sense of ages. But the common sense of twelve jurors would not be likely to be all alike. What one might regard as the common sense view of a question, another might think utterly destitute of common sense. If each juror were to act upon his common sense instead of the rules of law, there would be as many different opinions as there were jurors. With each juror acting upon his own common sense instead of the rules of law, we might expect a verdict in accordance with law ' when everlasting fate shall yield to fickle chance and chaos judge the strife.' " To same effect, Wright *v.* State, 69 *Ind.* 165 ; Anderson *v.* State, 41 *Wis.* 430, 434 ; Myers *v.* Commonwealth, 83 *Penn. St.* 142, *supra, sub. b.;* Anderson *v.* State, 41 *Wis.* 433 ; People *v.* Ah Sing, 51 *Cal.* 372. To apply these rules to the case at bar. Suppose, after deliberation, one or six of the jurors had in fact a reasonable doubt as to the guilt of the accused. One of those of a different opinion says : " Now give me ' some good reason,' arising from the evidence, for your alleged doubt." He attempts to do so but from want of capacity to formulate the operation of his mind, or of adequate language to express it, makes a dead failure. His interlocutor replies, " Well, you have tried to give ' some good reason ' for your doubt, and cannot do it, as you yourself concede. The court told you, if you couldn't, it was not a ' reasonable doubt.' " The juror replies, that is so, and agrees to a verdict of guilty. His reason and judgment are not convinced, his mind is fairly and justly in doubt, and yet, because " some good reason " cannot be given for the doubt, it is not reasonable. If a good reason must be given to explain a doubt that a jury might entertain, a burden is put upon them which would necessarily invite a discussion in the jury-room as to what is a good reason for a doubt. In condemning an affirmative definition of what is a reasonable doubt, a learned author—Bishop, says that even the attempt to define a reasonable doubt as equivalent to an

expression " of a moral certainty," or even " to such certainty that a prudent man will feel safe in acting upon it in his own important affairs," was held by several tribunals of different States to be erroneous, or at least not helpful and accurate. " Then what is a reasonable doubt ?" asks Chief Justice SHAW, in the Webster case (5 *Cush.* 320). " It is not mere possible doubt, because every thing relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge  If upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of it by acquittal." These precise words, indeed, this definition, is quoted *in extenso* by Judge EARL in the case of the People *v.* Schryver, 42 *N. Y.* 6. The Webster case is a standard authority as to what is a reasonable doubt. The sum total to be gathered from these rules is that a reasonable doubt is the condition of the mind of any of the jurors left after the sifting of the evidence by them, and in consequence of which they cannot say they feel an abiding conviction such as to warrant their conscience to believe in the guilt of the prisoner. In other words, it is that feeling that they cannot express, forcing them to hesitate in arriving at a conclusion of guilt. It is that something which is wanting, which is remaining, and which they feel they need in order to give them, as reasonable men, confidence in arriving at a correct judgment which is to be irrevocable and remediless. It is an effect, a want of an element for conviction—in other words, it is not an affirmative element ; it is a negative. If a good reason must be given in order to constitute a reasonable doubt, then the existence of an affirmative element, which is a good reason, is necessary before the minds of the jurors can be convinced that there exists a reasonable doubt.

*James W. Ridgway,* district attorney, for the people, respondent.

DANFORTH, J.—We agree with the learned judges of the

courts below in the opinion that the facts in evidence fully justified the submission of the case to the jury as one in which they might find the defendant guilty of murder in the first degree, as charged in the indictment, and think it necessary to consider only those points which allege error in regard to evidence, or the directions under which the evidence was to be weighed. First. The deposition of Mrs. Daghiero, the widow of the murdered man, taken on March 3, 1884, on the application of the prisoner, and in pursuance of the provisions of the Code of Criminal Procedure (§§ 620–635), was, during the trial and on March 5, offered in evidence in behalf of the people, the district attorney stating, as appears by the record, " that he would read the same, for the reason that the same conditions now exist to prevent the personal attendance of the witness, as existed at the time of granting the order for the taking of such examination, and that the witness is unable to personally attend by reason of her continued sickness." It also states that the defendant's counsel made no objection or exception to the reading of the same, and it was thereupon read.

Errors upon criminal trials can be made available in this court, only by exceptions duly taken on the trial. People v. Thompson, 41 N. Y. 6 ; People v. Casey, 72 Id. 399 ; Connors v. People, 50 Id. 240 ; Brotherton v. People, 75 Id. 159. And it follows, that as no objection was then taken, the questions now argued against the admissibility of the deposition are quite out of place. But notwithstanding this doctrine is well established, the learned counsel for the appellant contends that by section 527 of the Code of Criminal Procedure, a different rule is enacted, and that the question may be considered in the same manner as if an objection had been made on the trial.

It was, however, held otherwise in People v. Hovey, 92 N. Y. 554 ; 1 N. Y. Crim. Rep. 283 ; People v. Boas, 92 N. Y. 560 ; 1 N. Y. Crim. Rep. 287 ; Same v. D'Argencour, 95 N. Y. 631 ; 2 N. Y. Crim. Rep. 267.

Nor is any hardship imposed upon the appellant by the application of this rule. Assuming what, except for this purpose I by no means concede,—that there is any force in the objections now made to the reading of this deposition by the public prosecutor,—it was deliberately acquiesced in by the pris-

oner, and it was clearly in his power to waive them. Consent would not give the court jurisdiction nor authorize a substantial change in its fundamental mode of proceeding; that could be neither enlarged nor restricted. The trial must be by a jury of twelve, and not a less number, although he consent thereto (Cancemi's Case, 18 *N. Y.* 128); but he may waive the right to challenge. He cannot be compelled to be a witness against himself; but by consenting to take the stand he waives the constitutional protection, and may be examined in the same manner as any other witness. Conners *v.* People, *supra.* He is not subject to be twice put in jeopardy for the same offense; but if judgment is arrested on his motion, or if, for any reason, a new trial is granted on his prayer, he must submit to another trial. So the jury must act upon evidence; but secondary in place of primary evidence may be received. Admissions of facts may be allowed, and in many similar particulars consent will render valid what without it would be erroneous. Cancemi's Case, *supra;* Pierson *v.* People, 79 *N. Y.* 424. So here, if there were no statute upon the subject, whether the witness should be produced in court and there confronted with the prisoner, or whether her deposition, taken at his instance, should be read, might be left to his determination (Webster *v.* People, 92 *N. Y.* 422; 1 *N. Y. Crim. Rep.* 190); and this assent to the latter course having been signified by acquiescence, makes it immaterial to inquire as to the true meaning and effect of the statute (*supra*).

Second. In behalf of the prisoner twenty-eight requests to charge were submitted to the court, and among others one in these words: " The prisoner is entitled to the benefit of any reasonable doubt which the jury might entertain, not only upon the case generally but upon each and every specific fact necessary for them to find before reaching a verdict in the case; and if they entertain any such doubt in respect to any matter necessary to sustain a verdict for either of the higher offenses, then it is their duty to convict of the lesser, and if they entertain any such doubt on the whole case they must acquit." In response, the court said to the jury, " I charge you that. Perhaps I can put it in shorter terms, so that you can understand it. If you have any reasonable doubts upon any facts which

are necessary to convict the defendant, he is entitled to the benefit of that doubt. If you have any reasonable doubt of his guilt, he is entitled to be acquitted. If you have any reasonable doubt of his guilt of murder in the first degree, you cannot convict him on that count. If you have any reasonable doubt of guilt of murder in the second degree you cannot convict him on that count; or if you have any reasonable doubt as to manslaughter in either degree, you cannot convict him of that, and he must be acquitted. You must understand what a reasonable doubt is. It is not a mere guess or surmise that the man may not be guilty; it is such a doubt as a reasonable man might entertain after a fair review and consideration of the evidence—a doubt for which some good reason arising from the evidence can be given. When you find such a doubt as that in a case, it is your duty to give the prisoner the fullest and amplest benefit of it."

To all which defendant's counsel then and there duly excepted.

It is entirely well settled that such general exception is of no avail if any portion of the matter be well stated. No error was specifically pointed out, and it is not now claimed by the learned counsel for the appellant that all the propositions laid down in this portion of the charge are erroneous. The exception, therefore, might well be treated as unavailing; but having regard to the importance of the case, we have followed the argument for the appellant, and find no just cause of complaint. The criticism is limited to the definition given of a reasonable doubt, and aimed at that portion where, by way of paraphrase, the trial judge said, " a doubt for which some good reason arising from the evidence can be given." It should be read with the whole sentence of which it forms a part, and, so taken, seems only to distinguish that doubt which would avail the prisoner from one which is merely vague and imaginary.

The jury were not called upon to formulate and state their reasoning, but in substance to view all the circumstances from which an inference was to be drawn, and inquire whether, consistently with the truth of the whole, the prisoner might not be innocent—to weigh and consider the evidence, and if, from a deficiency of proof, or inconclusiveness of testimony,

any material fact was not established, there was then left a reasonable doubt arising from the evidence, and to the benefit of that the prisoner was entitled. We find in the language of the judge nothing to mislead or perplex a juror ; but if counsel at the trial thought otherwise, the attention of the court should have been directed to it. "An indefinable doubt, which cannot be stated, with the reason upon which it rests, so that it may be examined and discussed, can hardly be considered a reasonable doubt, as such a one would render the administration of justice impracticable ;" and as to this it has not been too strongly said, "all the authorities agree." Note to § 29, vol. 3, *Greenleaf on Evidence*, 14 ed.

Many other propositions are submitted to us as ground for a new trial. They have been examined, but we find no error of law, and must affirm the judgment.

All concur, except RAPALLO, J., not voting.