[No. 9835.  Department One.  December 4, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. OLE HARSTED, *Appellant*.[1]

ASSAULT—AGGRAVATED ASSAULT—INFORMATION—SUFFICIENCY.  An information for an assault with intent to commit sodomy, under Rem. & Bal. Code, § 2414, subd. 6, providing that one committing an assault with intent to commit a felony shall be guilty of assault in the second degree, is sufficient without stating the precise facts constituting the attempt, although the completed felony may be committed in various ways; since it is sufficient to allege a general attempt, and the assault is charged in the language of the statute.

WITNESSES—IMPEACHMENT—REPUTATION.  Upon a prosecution for an assault upon a boy eleven years old with intent to commit sodomy, it is not error to refuse an offer to impeach the boy by showing that a physician had reported that he had siphilis and to inquire whether a blood test had been taken; there being no direct offer to prove that he did have the disease.

CRIMINAL LAW—TRIAL—INSTRUCTIONS.  In a criminal prosecution, it is not error to reiterate instructions to the effect that the jury should free their minds from passion, prejudice and sympathy, and determine the case wholly upon the evidence without reference to the penalty.

CRIMINAL LAW—TRIAL—DEGREE OF OFFENSE—INSTRUCTIONS.  In a prosecution for assault in the second degree, it is not error to refuse instructions as to third degree assault, when there was no evidence calling therefor.

CRIMINAL LAW—REASONABLE DOUBT—INSTRUCTIONS.  A reasonable doubt is properly defined as a substantial doubt having reason for its basis, as distinguished from a fanciful or imaginary doubt, and such as arises from the evidence or want of evidence, and the absence of which would, after deliberation, enable one to have a settled and abiding conviction of guilt.

Appeal from a judgment of the superior court for King county, Gay, J., entered May 13, 1911, upon a trial and conviction of assault with intent to commit sodomy.  Affirmed.

*Gill, Hoyt & Frye*, for appellant.

*John F. Murphy, Hugh M. Caldwell*, and *H. B. Butler*, for respondent.

[1]Reported in 119 Pac. 24.

Gose, J.—This is an appeal from a judgment entered upon a verdict finding the appellant guilty of an assault in the second degree. The body of the information is as follows:

"He, said Ole Harsted, in the county of King, state of Washington, on the 6th day of March, 1911, did then and there wilfully, unlawfully and feloniously make an assault upon the person of one Virgil Cooper, a male person, with intent then and there to commit the crime of sodomy upon said Virgil Cooper."

A demurrer to the information, upon the ground that it does not state facts sufficient to constitute a crime or misdemeanor, was overruled. This ruling is assigned as error. The information was drawn under the provisions of Rem. & Bal. Code, § 2414, subd. 6. It provides:

"Every person who, under circumstances not amounting to assault in the first degree, . . .

"(6) Shall assault another with intent to commit a felony . . . shall be guilty of assault in the second degree."

Sodomy is defined in Rem. & Bal. Code, § 2456. It is argued that, because the completed offense may be committed in more than one way, the precise facts constituting the attempt should have been set forth in the information. This argument might have merit if the appellant had been charged with having committed the crime of sodomy. It is obvious that one may be guilty of an attempt to commit the offense without the acts having proceeded far enough to indicate anything further than a general intent to commit the completed offense. Moreover, the crime is charged in the language of the statute, and that, subject to exceptions not applicable here, is sufficient. *People v. Williams*, 59 Cal. 397; *Honselman v. People*, 168 Ill. 172, 48 N. E. 304; *Kelly v. People*, 192 Ill. 119, 61 N. E. 425, 85 Am. St. 323; *State v. Ward*, 35 Minn. 182, 28 N. W. 192; *State v. Johnson*, 114 Iowa 430, 87 N. W. 279; *State v. Phelps*, 22 Wash. 181, 60 Pac. 134. The *Honselman* case is directly in point. *State v. Carey*, 4 Wash. 424, 30 Pac. 729, cited by the ap-

pellant, is not in point. In that case, Carey was charged with having practiced medicine without first having obtained a license. The information was held defective, in that it did not charge the acts which the statute makes definitive of the crime. *State v. Campbell,* 29 Tex. 44, 94 Am. Dec. 251, also cited by the appellant, supports his contention, but we do not desire to follow it.

Virgil Cooper, the boy upon whom the assault is alleged to have been made, testified that he was eleven years old, and that, after the arrest of the appellant, his throat and mouth were sore. While the boy was being detained, one of the juvenile officers informed the prosecuting attorney that he had reason to believe that the boy had siphilis. Acting upon this statement, the prosecutor had the appellant's bond increased. Later he had the boy examined by two physicians, who reported to him that the boy did not have that disease. These facts in reference to the siphilitic symptoms of the boy appear from the statement of the prosecuting attorney. Appellant's counsel thereafter offered to prove, that the county physician, "examined the boy and reported" that he had siphilis in the mouth; that the appellant's blood had been tested and "found free from exterior evidence of siphilis," and "found free from taint." His counsel further stated:

"I want to examine Dr. Hall and ask whether he has made a blood test of the boy to determine whether he has siphilis, . . . and whether he did report to any official that the boy had siphilis in the mouth. . . . If he had it, then he had been in the habit of committing the offense with other men. That is where we think its materiality rests."

The offer was denied by the court. It is argued in the brief, and was pressed with much earnestness at the bar, that this ruling was error. We cannot acquiesce in this view. There was no direct offer to prove that the boy had siphilis. Counsel merely wanted to show that such a condition had been reported, and further wanted to inquire of the physi-

cian whether he had tested the boy's blood with a view of ascertaining whether it showed the presence of that disease. In proper cases the general reputation of a witness for immorality may be shown, but we think the better rule is that particular acts of immorality cannot be shown, either upon cross-examination or by the evidence of third persons, for the purpose of discrediting the witness. Cases may arise, however, where the evidence offered is of such a nature that it may be admitted within the discretion of the court. 2 Elliott, Evidence, § 978.

In two instructions the court admonished the jury that they should free their minds from prejudice and sympathy, "whether for the defendant or any other person;" and that they should, "bring to bear a judgment that is cool, calculating and sober, unaffected by any feeling of prejudice, uninfluenced by any feelings of sympathy, untrammeled by any anxiety or fear as to penalty." In criticism of these instructions, it is said that they reiterate the caution to the jury that they must determine the case, "freed from any of the mental processes by which human beings usually arrive at conclusions." We cannot think that the instructions are erroneous. It is certainly the duty of the jury to free their minds from passion, prejudice, and sympathy, and determine the case solely upon the evidence. In other words, it is the plain duty of the jury to determine the guilt or innocence of the accused from the evidence in the case, leaving the penalty, if any, to be adjudged by the court. This is not a case where by reiteration and emphasis the court indirectly gets before the jury its view of the facts. If it were, we would not hesitate to order a new trial.

There was no error in the failure of the court to instruct as to an assault in the third degree. There is no evidence calling for such instruction. The appellant was either guilty as charged or not guilty. The law does not warrant an instruction covering an included crime when there is no

evidence supporting it.  *State v. Kruger*, 60 Wash. 542, 111 Pac. 769.

In defining a reasonable doubt, the court instructed the jury as follows:

"The burden is on the state of proving every fact material and necessary to a conviction by competent evidence beyond a reasonable doubt.  It is not sufficient that the state should prove these facts by a mere preponderance of the testimony, nor, on the other hand is it necessary that they should prove conclusively in such manner as to leave room for any doubt whatever.  Very few things in the whole domain of human knowledge are susceptible of absolute proof. We can have a moral certainty or a reasonable certainty, which may vary in degree, but rarely an absolute certainty. *The expression 'reasonable doubt' means in law just what the words imply,— a doubt founded upon some good reason.* It must not arise from a merciful disposition or a kindly sympathetic feeling, or a desire to avoid performing a disagreeable duty.  It must arise from the evidence or lack of evidence.  It must not be a mere whim or a vague conjectural doubt or misgiving founded upon mere possibilities.  It must be a substantial doubt, such as an honest, sensible and fair minded man might with reason entertain, consistently with a conscientious desire to ascertain the truth.  You must use your common sense as men of experience, possessing some knowledge of worldly affairs, and if, after examining carefully all the facts and circumstances in this case, you can say and feel that you have settled and abiding conviction of guilt of the defendant, then you are satisfied of guilt beyond a reasonable doubt.  If you have not such a conviction then you should acquit him."

The appellant confidently asserts that this instruction is erroneous and highly prejudicial.  Specific exception is taken to the italicized words.  The phrase "reasonable doubt" is so clear and exact that it may well be doubted whether an instruction has ever been formulated that served to either simplify or elucidate it.  It means, however, if it can be said to be resolvable into other language, that it must be a substantial doubt or one having reason for its basis, as

distinguished from a fanciful or imaginary doubt, and such doubt must arise from the evidence in the case or from the want of evidence. As a pure question of logic, there can be no difference between a doubt for which a reason can be given and one for which a good reason can be given. When a cause has been submitted to a jury, it retires to its room for the purpose of consultation, discussion, and deliberation. These precede the verdict. In practice, it is known that verdicts are sometimes reached only after long and acrimonious debate in the jury room. While it is true, as argued, that the jury is not required to report to the court a reason for its verdict, it is equally true that, in the consideration of the evidence, one juror has a right to call upon another for a reason for his faith. The very word "deliberation" presupposes a painstaking and conscientious purpose upon the part of each juror to weigh the evidence in order that an intelligent verdict may be reached. If discussion and an interchange of views upon the evidence were not contemplated, the law would dissolve the jury after one unsuccessful ballot. Discussion tests the reasonableness of the conflicting views of the jurors, and weeds out fanciful and imaginary doubts.

In one of the cases relied upon by appellant, *Siberry v. State*, 133 Ind. 677, 33 N. E. 681, an instruction that "a reasonable doubt is a doubt which has some reason for its basis" was condemned as erroneous. The court said:

"It puts upon the defendant the burden of furnishing to every juror a reason why he is not satisfied of his guilt, with the certainty which the law requires, before there can be a conviction. There is no such burden resting on the defendant or a juror in a criminal case."

We cannot agree with the learned court's deduction. The duty always rests upon the state of satisfying the minds of the jury beyond a reasonable doubt of the guilt of the accused. The question is, what constitutes such a doubt. The instruction has been sanctioned by this court. *State v. Harras*, 25 Wash. 416, 65 Pac. 744. A similar instruction

was approved in the following cases: *Butler v. State*, 102 Wis. 364, 78 N. W. 590; *State v. Patton*, 66 Kan. 486, 71 Pac. 840; *Hodge v. State*, 97 Ala. 37, 12 South. 164, 38 Am. St. 145; *Vann v. State*, 83 Ga. 44, 9 S. E. 945; *People v. Guidici*, 100 N. Y. 503, 3 N. E. 493; *State v. Jefferson*, 43 La. Ann. 995, 10 South. 199; *Wallace v. State*, 41 Fla. 547, 26 South. 713; *State v. Serenson*, 7 S. D. 277, 64 N. W. 130; *State v. Morey*, 25 Ore. 241, 35 Pac. 655, 36 Pac. 573.

In the *Butler* case, the court said: "A doubt cannot be reasonable unless a reason therefor exists, and if such reason exists it can be given." In the *Patton* case an instruction defining a reasonable doubt as such a doubt "as a jury are able to give a reason for," was approved. In the *Hodge* case the court reversed the judgment for the refusal of the court to instruct at the defendant's request that "a reasonable doubt is defined to be a doubt for which a reason could be given." The *Serenson* case approves a like instruction. In the *Vann* case an instruction was approved which stated that "the doubt must be a reasonable doubt; not a conjured up doubt—such a doubt as you might conjure up to acquit a friend, but one which you could give a reason for." In the *Guidici* case an instruction in the following language was approved:

"You must understand what a reasonable doubt is. It is not a mere guess or surmise that the man may not be guilty, it is such a doubt as a reasonable man might entertain after a fair review and consideration of the evidence. A doubt for which some good reason arising from the evidence can be given."

The court said, reading the instruction as a whole, that it only distinguishes a reasonable doubt from one which is merely vague and imaginary. In the *Jefferson* case a charge was sustained which defined a reasonable doubt as "a serious, sensible doubt, such as you could give a good reason for."

The appellant has cited *Bennett v. State* (Ark.), 128 S. W. 851; *Siberry v. State, supra; Blue v. State,* 86 Neb. 189, 125 N. W. 136, and *Gragg v. State,* 3 Okl. Cr. 409, 106 Pac. 350. In these cases a somewhat similar instruction to the one at bar was condemned as being erroneous and prejudicial. We are impressed, however, with the view adopted by the cases first cited, and feel constrained to hold that the instruction is not erroneous. Other criticisms of the instructions are without merit, and require no separate consideration.

The judgment is affirmed.

DUNBAR, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.