**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79897-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| WILLIE JAUAN HAWKINS, | ) | |
| | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — A prosecutor functions as the representative of the people in the search for justice. The prosecutor also owes a duty to defendants to see that their rights to a constitutionally fair trial are not violated. It is inappropriate in a criminal trial for the prosecutor to seek opinion testimony as to the guilt of the defendant, the intent of the accused, or the credibility of witnesses. This is particularly true where the opinion sought is that of a law enforcement officer.

Willie Hawkins appeals his conviction for assault in the third degree. Hawkins argues that the prosecutor committed misconduct by eliciting improper opinion testimony from the arresting officer concerning the credibility of the State's only witness

to the alleged assault. We agree and reverse Hawkins's conviction and remand for a new trial.

I.

On May 18, 2017, King County Sheriff's Deputy Greg Baker, responded to an incident on a King County Metro bus in Renton, Washington. Abdullahi Ali, the Metro driver, called to report that a passenger physically assaulted him. When Deputy Baker arrived, Hawkins was sitting calmly outside the parked bus.

Hawkins explained to Baker that Ali had accused him of "palming" his ORCA card[1] to evade paying the fare, but that Hawkins had 74 points on the card and was not evading the fare. Hawkins explained he did not touch Ali. Ali explained that when Hawkins got on the bus, his ORCA card did not register. Ali asked Hawkins to rescan his ORCA card and Hawkins got mad. Ali explained that Hawkins "start[ed] yelling and cussing and touching [his] neck," at which point Ali called Metro dispatch to call the police. Ali explained that Hawkins was pushing his arm, perpendicular toward Ali, and Ali tried to push Hawkins away. At one point, Ali said that Hawkins put his hands on Ali's throat. Ali had no visible injuries and declined any medical attention. The Metro bus lacked video surveillance.

There were two Metro passengers on the bus when Deputy Baker arrived. One of the passengers did not speak English. The other passenger told Baker he witnessed an argument between Hawkins and Ali but did not see any physical altercation. Baker did not get the contact information for either witness.

Hawkins was arrested and charged with assault in the third degree.

---

[1] An ORCA card is a prepaid card used to pay for Metro fares.

At trial defense counsel emphasized the State's shoddy investigation. The jury learned only that there were two Metro passengers who may have witnessed some of the event, one passenger that did not speak English and the other passenger that spoke to Baker, but that Baker failed to take their names or contact information. Defense counsel requested a missing witness instruction. The trial court denied the requested instruction.

The only witness to the alleged assault that testified at trial was Ali. During his testimony, the jury learned that a few months after his encounter with Hawkins, Ali was involved in a dispute with a different Metro rider, which was caught on video. Metro investigated and determined that Ali's account was not credible. During cross-examination, Ali at first refused to acknowledge the determination or the exhibit documenting the determination.

The State's only other witnesses were Deputy Baker and Deputy Alan Garrison, the King County Sheriff's detective that reviewed Baker's initial investigation and referred Hawkins's case for prosecution. Over defense counsel's repeated objections, the prosecutor tried to elicit opinion testimony from both deputies concerning whether they believed Ali was a credible witness.

During redirect examination, the prosecutor asked Baker about the importance of writing reports following an investigation and, if Baker did not believe the reporting party was credible, whether he would make the arrest. The following exchange occurred:

> [Prosecutor]: When you were talking with counsel, you were talking about your job and investigation being to find the truth and I want to ask you, if you don't believe a witness, for example, if you're at an assault, if you don't believe their statement, would you ever arrest the other person?

[Defense attorney]: Object, calls for speculation.

The Court: I'll sustain it. Can you ask it a different way?

[Prosecutor]: When you're deciding whether or not to arrest someone, would you ever make that arrest if you didn't believe the reporting party?

[Defense attorney]: Again, I would object, speculation, 401, and 403.

The Court: I'll sustain. Ask it a different way.

[Prosecutor]: You talked about probable cause and how you have to investigate until you think that you have probable cause to arrest someone. In an assault case, what has to happen for you to feel like you have probable cause to arrest?

[Defense attorney]: I would object. Relevance.

The Court: I'm going to allow this.

[Baker]: So every case is different. If probable cause is determined and I have a credible witness who wants to testify in court, that gives me my PC, but a lot of cases we have discretion and sometimes we can, if we have both parties we can—or if we have the other party, we can write a case and send it to the prosecutors if that person can be identified.

[Prosecutor]: If you have a case where you don't feel like any of your witnesses are credible, would you make an arrest?

[Defense attorney]: I'll object as relevance.

The Court: Yeah. I'm going to sustain.

[Prosecutor]: In that case, Your Honor, I don't believe that I have any other questions for this officer at this time.

Several of the defense's objections were sustained, but the court eventually allowed Baker to answer. Although Baker's answer was couched in probable cause to arrest, Baker's answer implied he believed Ali's version of events over Hawkins.

Hawkins also objected to Garrison's testimony. The following exchange occurred during the State's redirect examination of Garrison about when he would refer a case for prosecution.

[Prosecutor]: All right. And you indicated that sometimes you get better reports than others; sometimes you get better investigations than others. When you have a report where the investigation wasn't as thorough as the ideal that you discussed, would you typically still refer that for prosecution or would you reject that?

[Defense attorney]: Again, I would object. Relevance and 403.

The Court: I'm going to overrule.

[Garrison]: It depends on whether I believe the prosecutor's office would have some credible ability to prosecute it without the information I don't have.

Again, Garrison's answer imbued an opinion about credibility. Garrison stated he would only refer a case for prosecution if there was "some credible ability to prosecute."

The jury convicted Hawkins as charged.

## II.

Hawkins contends that the prosecutor committed prejudicial misconduct by eliciting opinion testimony from police witnesses concerning witness veracity. Hawkins seeks reversal of his conviction because the prosecutor's conduct was both improper and prejudicial. We agree.

## A.

"A prosecutor serves two important functions. A prosecutor must enforce the law by prosecuting those who have violated the peace and dignity of the state by breaking the law. A prosecutor also functions as the representative of the people in a quasijudicial capacity in a search for justice." State v. Monday, 171 Wn.2d 667, 676, 257, P.3d 551 (2011). Defendants are among the people the prosecutor represents and the prosecutor owes a duty to defendants to see that their rights to a constitutionally fair trial are not violated. Monday, 171 Wn.2d at 676. "Thus, a prosecutor must function

within boundaries while zealously seeking justice." Monday, 171 Wn.2d at 676. "A prosecutor does not fulfill either role by securing a conviction based on proceedings that violate a defendant's right to a fair trial—such convictions in fact undermine the integrity of our entire criminal justice system." State v. Walker, 182 Wn.2d 463, 476, 341 P.3d 976 (2015). A prosecutor must "seek convictions based on probative evidence and sound reason." State v. Castenda-Perez, 61 Wn. App. 354, 363, 810 P.2d 74 (1991).

"The role of the jury is to be held 'inviolate' under Washington's constitution." State v. Montgomery, 163 Wn.2d 577, 590, 183 P.3d 267 (2008) (citing U.S. CONST. amend. VII; WASH. CONST. art. I § 21, 22). "To the jury is consigned under the constitution 'the ultimate power to weigh the evidence and determine the facts.'" Montgomery, 163 Wn.2d at 590. Consistent with this constitutional protection, lay witnesses may give their opinion based on rational perceptions that help the jury understand the witness's testimony and are not based on scientific or specialized knowledge. Montgomery, 163 Wn.2d at 591. But, a witness "should not tell the jury what result to reach and opinion testimony should be avoided if the information can be presented in such a way that the jury can draw its own conclusions." Montgomery, 163 Wn.2d at 591.

There are, however, some areas of opinion testimony that are inappropriate in criminal trials. Montgomery, 163 Wn.2d at 591. "Among these are opinions, particularly expressions of personal belief, as to the guilt of the defendant, the intent of the accused, or the veracity of witnesses." Montgomery, 163 Wn.2d at 591. This is particularly true when the opinion testimony is sought from law enforcement. Officer testimony has "an

aura of special reliability and trustworthiness." State v. Demery, 144 Wn.2d 753, 763, 30 P.3d 1278 (2001).

B.

To establish prosecutorial misconduct, the defendant must prove that the prosecuting attorney's conduct was both improper and prejudicial. State v. Weber, 159 Wn.2d 252, 270, 149 P.3d 646 (2006). A prosecutor's misconduct is prejudicial if there is a substantial likelihood that the misconduct affected the jury's verdict. Weber, 156 Wn.2d at 270. If a prosecutor deliberately elicits impermissible opinion testimony, it is misconduct. State v. Jungers, 125 Wn. App. 895, 902-03, 106 P.3d 827 (2005).

In both its briefing and at oral argument the State tacitly conceded that the prosecutor's questions were improper and served no probative value.[2] Thus, we must decide whether the prosecutor's questions and the officers' answers caused prejudice to Hawkins.

The prejudice to Hawkins is readily apparent. While most of the defense objections to the prosecutor's questioning of Baker were sustained, Hawkins was prejudiced by the prosecutor's repeated emphasis of a credible witness from a law enforcement officer. There is no question that the State's case against Hawkins was weak. There was no physical evidence, there was no surveillance footage, and Ali had no visible injuries and declined medical attention. The State offered no firsthand witnesses other than Ali. While another witness was present, Baker failed to record the

---

[2] The State contends that the defense attorney failed to object at trial because of improper opinion testimony and must prove the conduct was so flagrant and ill intentioned that a curative instruction would not have remedied the prejudice. We disagree. The defense attorney objected on the grounds of relevance and speculation. These objections were enough to preserve the issue for appeal. The questions posed by the prosecutor had no probative value and were both flagrant and ill intentioned.

witness's name or contact information even though the witness may have had exculpatory information. As a result, the State's case turned largely on Ali's credibility—credibility that was cast doubt on during Ali's cross-examination. Because the State's case was weak, eliciting the officers' opinions that they believed they had a credible witness in Ali had a clear prejudicial effect on Hawkins's right to a fair trial.

Moreover, the prosecutor's questions to Baker and Garrison were of no probative value to the State's case. Testimony that the officers would not make an arrest or refer a case for prosecution if they did not believe the complaining witness is irrelevant to proving the elements of assault.

The State argues that "[a]n improper opinion may be harmless if the witness is merely stating the obvious." The State contends that "a police officer who testifies that he or she made an arrest is essentially stating their belief that the defendant is probably guilty, but this opinion would already be self-evident to any reasonable juror from the circumstances." We disagree with this characterization of the prejudicial effect. Despite repeated sustained objections, the prosecutor continued to question Baker until he finally confirmed that he would not make an arrest if he did not have a credible witness—this implied to the jury that Baker believed Ali over Hawkins. The prosecutor's repeated emphasis on the officers' inadmissible and irrelevant credibility opinion was prejudicial. This strategy prejudiced Hawkins's right to a fair trial.

We reverse and remand for a new trial.[3]

_Mann, C.J._

WE CONCUR:

_Brummer, J_ _Leach, J._

---

[3] Hawkins also alternatively argued that a new trial was necessary because his counsel was ineffective and that the court erred when it denied his request for a missing witness instruction. Since we reverse, we do not reach these alternative arguments.