IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SEATTLE, | ) | No. 81315-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KATHERINE GAUDETTE, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — After a jury trial, Katherine Gaudette was found guilty of the gross misdemeanor offense of trespass in the first degree. Gaudette challenged testimony by the homeowners regarding the general timing of videos from their security system as hearsay, both at trial and on direct appeal to King County Superior Court. The superior court affirmed the conviction after determining that the statements were not hearsay. Gaudette sought discretionary review, presenting only the hearsay issue as an assignment of error. Given the identification of an error of constitutional magnitude in connection with the to-convict instruction provided to the jury at trial that presents a dispositive sufficiency issue, we need not reach the hearsay challenge. We remand for dismissal and vacation of Gaudette's conviction.

FACTS

Crystal and Joseph Anderson[1] live with their children and four dogs in a house with a wooden fence that surrounds the backyard. On August 16, 2018, at approximately 4:00 a.m., the Andersons were awakened by their dogs frantically barking. They each got out of bed, suspecting the commotion was due to an animal in the backyard. When they looked in the space where the dogs were, they saw a pair of human hands reaching into their home through a pet door in the exterior wall of the house. Crystal immediately screamed, but the hands continued to move about. Joseph announced that he was getting his gun, at which point the hands retreated out of the house. Crystal went to the kitchen window, which is closest to the pet door, looked out the window and called 911. Joseph turned on a light on the deck. They both saw the individual in the backyard leave through the gate in the fence. The police arrived 20 minutes later, spoke with the couple, took down their descriptions of the person, and looked for the suspect without success.

Crystal then went back to bed while Joseph stayed awake. Joseph noticed someone in the front yard about half an hour after the police had departed. Crystal woke up, went into the living room, looked out the window, and saw a woman later identified as Katherine Gaudette in the front yard. Gaudette was walking on a cobblestone pathway that leads from the sidewalk to the front door of the Andersons' home. Joseph also saw Gaudette in the front yard. The couple

---

[1] Because they share the same last name, we refer to the Andersons by their first names for clarity. No disrespect is intended.

testified at trial that Gaudette was the same size and was wearing similar clothes as the person they saw fleeing through the gate earlier in the morning. They observed Gaudette sit down on the walkway, light a candle, play some music on her cell phone, and begin to draw as she looked at the couple through their living room window.

Joseph went outside to ask Gaudette to leave. Gaudette stated that she was looking for her brother. Crystal called 911 again. As the police arrived, Gaudette moved to the sidewalk with her belongings. The officer who contacted Gaudette did not observe any signs of alcohol or drug use. Gaudette's Mercedes was located nearby and a key to that car was found on her person when she was searched incident to arrest for trespass. She was later also charged with violation of an anti-harassment order that was entered as a result of this arrest, based on her presence within 500 feet of the Andersons' property when she retrieved her car after being released from jail on the trespass charge.

At trial, videos from the Andersons' Ring surveillance system[2] were admitted as exhibits. The motion-activated videos showed Gaudette approaching the Andersons' home multiple times. The footage was not timestamped. The Andersons were each able to testify regarding the general timeframe during which they believed the videos were taken. This time range was based on when the couple had gone to bed and when they later thought to review the videos after the

_____

[2] Ring LLC manufactures home security products, including a doorbell that captures video and pairs with an app which the user can use to view live footage on their phone. It also has the ability to notify the user via the app when the camera senses motion or activity within a certain range. Further, the user is able to speak through the hardware using their phone. The system stores all video data on a cloud-based server.

police left following the second incident. Neither of them testified to a specific time for any of the videos that were admitted.

The jury found Gaudette guilty of trespass in the first degree, a gross misdemeanor, but acquitted her of violation of a civil anti-harassment order. Gaudette appealed her conviction to King County Superior Court, arguing that the trial court erred by allowing the Andersons to testify to the timing of the admitted videos and that prosecutorial misconduct occurred such that it deprived Gaudette of a fair trial. The superior court determined that the testimony was not hearsay and affirmed Gaudette's conviction.

Gaudette timely filed a motion for discretionary review, which this court granted. In briefing, Gaudette renewed her argument as to the evidentiary challenge to the Andersons' testimony, but abandoned her claim of prosecutorial misconduct. At oral argument before this court, the panel inquired as to a potential error regarding the to-convict instruction which was given to the jury at trial. The City indicated its position was that the issue had been waived by defense. Gaudette requested leave to submit additional briefing and the court directed the parties to provide supplemental briefing on that limited question.

ANALYSIS

The court's inquiry at oral argument identified an issue which is dispositive of this appeal. As such, we do not reach the hearsay issue initially addressed by the parties in their briefing. "[T]his court has frequently recognized it is not constrained by the issues as framed by the parties if the parties ignore a

constitutional mandate, a statutory commandment, or an established precedent." City of Seattle v. McCready, 123 Wn.2d 260, 269, 868 P.2d 134 (1994). Appellate courts may seek out briefing regarding issues deemed important to proper adjudication. See RAP 12.1(b). Here, the court raised a question regarding the to-convict instruction presented to the jury, both in written form and as orally provided by the trial judge, because the identified error is of constitutional magnitude. See State v. Johnson, 188 Wn.2d 742, 750–51, 399 P.3d 507 (2017) ("Sufficiency review secures the fundamental protection of due process of law"); State v. Espinosa, 8 Wn. App. 2d 353, 363–64, 438 P.3d 582 (2019) (Reversal is required unless the instructional error is "'trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome.'" (Quoting State v. Townsend, 142 Wn.2d 838, 848, 15 P.3d 145)(2001)).

"Under both the federal and state constitutions, due process requires that the State prove every element of a crime beyond a reasonable doubt." Johnson, Wn.2d at 750; U.S. CONST. amend. XIV; WASH CONST. art. I § 3.[3] The law of the case doctrine requires the prosecuting government entity to prove every element in the to-convict instruction beyond a reasonable doubt. State v. Dreewes, 192 Wn.2d 812, 821, 432 P.3d 795 (2019). "The law of the case is an established doctrine with roots reaching back to the earliest days of statehood." State v. Hickman, 135 Wn.2d 97, 101, 954 P.2d 900 (1998). The doctrine provides that

---

[3] Because due process rights are held by the accused, regardless of whether they face criminal charges in municipal, district or superior court, municipal prosecutors are held to the same standards, and carry the same burden of proof, as prosecutors presenting criminal charges on behalf of the State.

jury instructions not objected to become the law of the case. Dreewes, 192 Wn.2d at 821. This court considers errors regarding the instructions as given. See State v. Ng, 110 Wn.2d 32, 39, 750 P.2d 632 (1988) (the State failing to object to jury instruction established them as "the law of the case and we will consider error predicated on them.").

The issue here is whether there was sufficient evidence to support Gaudette's conviction for trespass in the first degree, in light of the date provided in the to-convict instruction. The to-convict instruction in this case was prepared by the City, provided to jurors in written form in the instruction packets taken with them into deliberation, and also presented orally by the trial judge prior to closing arguments of the parties.

"In assessing the sufficiency of the evidence, the court must view the evidence in the light most favorable to the State and decide whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." State v. Mines, 163 Wn.2d 387, 391, 179 P.3d 835 (2008). A challenge to sufficiency of the evidence acknowledges the truth of the State's evidence. Id. Here, the to-convict instruction as to the trespass in the first degree charge read:

> To convict the defendant of the crime of Criminal Trespass in the First Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 16th day of October, 2018, the defendant knowingly entered or remained in a building;
> (2) That the defendant's entry or remaining in the building was unlawful;
> (3) That the defendant knew that the entry or remaining in the building was unlawful; and
> (4) That the building was located in the City of Seattle.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

(Emphasis added).

Gaudette argues that given the date specified in the to-convict instruction, insufficient evidence supports Gaudette's conviction for trespass in the first degree. All of the testimony adduced at trial went to events that occurred on the Andersons' property in the early morning hours on August 16, 2018, culminating in Gaudette's arrest on that same date. There is no evidence to connect the allegations brought by the City against Gaudette to any date in October 2018. Further, the City's arguments in supplemental briefing are predicated on an implicit concession that the date included in this critical jury instruction is unsupported by the evidence. We agree with the parties that insufficient evidence supports Gaudette's conviction for criminal trespass on October 16, 2018.

We find guidance in Hickman, wherein the State included the wrong county in the to-convict instruction; the crime was alleged to have been committed in King County, rather than Snohomish County as erroneously stated in the instruction. 135 Wn.2d at 100–101. The jury returned a verdict of guilty and Hickman argued on appeal that the State assumed the burden to prove the added element that the crime was committed in Snohomish County, Washington, but failed to do so. Id. at 101. Our state's Supreme Court determined that the State had taken on the burden to prove the crime occurred in Snohomish County when it failed to object, thereby accepting, the included element in the instruction. Id. at 100–02. The

Supreme Court went on to note "the law of the case doctrine benefits the system by encouraging trial counsel to review all jury instructions to ensure their propriety before the instructions are given to the jury." Id. at 105. Further, the court in Hickman explained that CrR 6.15(c) reiterates this notion by requiring all objections to jury instructions be made before the instructions are given. Id. The Supreme Court went on to dismiss Hickman's conviction for insurance fraud based on the State's failure to prove the added venue element. Id. at 105–06.

The case before us further illustrates the importance of diligence on the part of the government when seeking a criminal conviction. A prosecutor functions as the representative of the people in a quasijudicial capacity in searching for justice. State v. Hawkins, 14 Wn. App. 2d 182, 188, 469 P.3d 1179 (2020). "The prosecutor owes a duty to defendants to see that their rights to a constitutionally fair trial are not violated." State v. Monday, 171 Wn.2d 667, 676, 257 P.3d 551 (2011). A conviction sought by the prosecutor which undermines a defendant's rights "undermine[s] the integrity of our entire criminal justice system." State v. Walker, 182 Wn.2d 463, 476, 341 P.3d 976 (2015). A prosecutor is a public officer whose devotion to duty is not measured by the number of their convictions. See State v. Reed, 102 Wn.2d 140, 147, 684 P.2d 699 (1984).

The City argues in supplemental briefing that "[t]he mistaken date in the 'to convict' instruction obviously was a typographical error." However, the suggestion that this court, a court of review explicitly tasked with ensuring fair process for litigants in our state's trial courts, should ignore an error of this magnitude in the to-convict instruction in criminal proceedings is offensive to the very notion of

justice. "Close enough" is not a standard of proof utilized within our criminal justice system. By submitting an erroneous to-convict instruction to the court, the City failed to meet its weighty burden as the prosecuting entity in this case and case law is clear as to the remedy for such an error.

Though the City argues this was a typographical error that did not mislead the jury, we fundamentally disagree. As discussed above, Hickman makes clear that the prosecutor's inclusion of the erroneous date bound the City to the burden to prove that element. It is also disingenuous to minimize the inclusion of an incorrect date of an alleged crime in an essential instruction as a mere typographical error. See State v. Smith, 131 Wn.2d 258, 263, 930 P.2d 917 (1997) ("a 'to convict' instruction must contain all of the elements of the crime because it serves as a 'yardstick' by which the jury measures the evidence to determine guilt or innocence." (quoting State v. Emmanuel, 42 Wn.2d 799, 819, 259 P.2d 845 (1953))); see also State v. DeRyke, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003) ("a reviewing court may not rely on other instructions to supply the element missing from the 'to convict' instruction."). That "typographical error" became an element the City was duty-bound to prove up when it submitted the instruction. Excusing the City's presentation of an improper date in the to-convict instruction given at a jury trial, where liberty interests of the accused are at stake, would fundamentally relieve the prosecutor of its burden to prove every element beyond a reasonable doubt and would deny the accused due process. See State v. Deal, 128 Wn.2d 693, 698–703, 911 P.2d 996 (1996). To hold as the City posits would simply be inconsistent with fundamental principles of the criminal justice system as set out in

an expansive body of case law spanning back to the earliest days of our statehood. See State v. Harsted, 66 Wash. 158, 163, 119 P. 24 (1911) ("The duty always rests upon the State of satisfying the minds of the jury beyond a reasonable doubt of the guilt of the accused"); see also State v. Dotson, 97 Wash. 607, 609, 166 P. 769 (1917) ("Every essential element of the offense charged must be proved, and it must be shown beyond a reasonable doubt that the offense was committed by the defendant.").

Finally, the City avers that the "on or about" language utilized in the to-convict instruction resolves the sufficiency issue. However, the authority it offers for this contention is distinguishable. In State v. Hayes, the court provided that "[i]n sexual abuse cases where multiple counts are alleged to have occurred within the same charging period, the State need not elect particular acts associated with each count so long as the evidence 'clearly delineate[s] specific and distinct incidents of sexual abuse' during the charging periods." 81 Wn. App. 425, 431, 914 P.2d 788 (1996) (quoting State v. Newman, 63 Wn. App. 841, 851, 822 P.2d 308 (1992)). Additionally, in this context, a trial court must instruct the jury that they must be unanimous as to which act constitutes the count charged and that they must find "'separate and distinct acts'" for each count when the counts are identically charged. Id. (quoting State v. Noltie, 116 Wn.2d 831, 842–43, 809 P.2d 190 (1991)). Hayes has no bearing on the matter at hand because this case is not about sexual abuse, nor are there multiple events alleged which relate to multiple charges. The other cases cited by the City[4] either involve repeated conduct, which

---

[4] State v. Williams, 124 Wash. 160, 213 P. 921 (1923); State v. Polk, 187 Wn. App. 380, 348 P.3d 1255 (2015).

is a critical factual distinction, or a discrepancy of a few days as opposed to multiple months. We are not persuaded that the "on or about" language in the to-convict instruction of this case can do the heavy lifting for the City to overcome this error as to the specific date. The testimony surrounding the incident was explicit as to events occurring on one precise day, months prior to the date provided in the to-convict instruction.

Given that Gaudette's conviction is not supported by sufficient evidence, the proper remedy is dismissal. Hickman, 135 Wn.2d at 103. When a reviewing court finds insufficient evidence to prove an added element, reversal is required. Id. Further, "[r]etrial following reversal for insufficient evidence is 'unequivocally prohibited' and dismissal is the remedy." Id. (quoting State v. Hardesty, 129 Wn.2d 303, 309, 915 P.2d 1080 (1996)). The government may not have innumerable chances to seek a conviction for the same alleged criminal act; when it proceeds to trial, seeking to curtail the liberty interests of the accused, it must be prepared to meet its burden in terms of the evidence it produces, the instruction it submits to the court, and ultimately, the fairness of the process for the defendant.

In light of our review of the record, as well as the parties' acknowledgement that no evidence supports a finding of any criminal conduct by Gaudette occurring on October 16, 2018, we find that her conviction was not supported by sufficient evidence. Accordingly, her conviction must be dismissed and vacated.

Reversed and remanded.

WE CONCUR: