# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53451-7-II |
| Respondent, | |
| v. | |
| | UNPUBLISHED OPINION |
| MICHAEL JAY PHILLIPS, JR., | |
| Appellant. | |

PRICE, J. — Nicholas Edwards was a guest at an apartment belonging to his mother, sister, and stepfather, Michael Phillips.  Nicholas had been drinking heavily over the course of the evening, and Phillips insisted that he leave.  Nicholas tried to punch Phillips, and Phillips, who had not been drinking, knocked Nicholas to the floor.  Phillips continued to beat Nicholas with his fists and then a lava lamp even after Nicholas lost consciousness.  After trial, a jury found Phillips guilty of first degree assault.

Phillips appeals his conviction.  He argues that his conviction should be overturned because of a violation of his right to a complete record on appeal, a violation of his right to a public trial, a violation of his right to trial by jury, improper testimony as to credibility, prosecutorial misconduct, improper admission of evidence regarding his Marine Corps training, ineffective assistance of counsel, and cumulative error.  He also raises additional claims in a statement of additional grounds.  We disagree and affirm.

FACTS

I. BACKGROUND

Phillips is married to Michelle Edwards. Michelle Edwards has five children: Nicholas, Mark Hajek, Kalene Edwards, Tonja Hajek, and Jeannine Hajek.[1] Michelle and Phillips share an apartment with Kalene. Nicholas and Mark would often spend time at the apartment in Kalene's room and stay late into the night. They would regularly bring alcohol and get drunk.

On the evening of the incident, Nicholas and Mark were drinking heavily in Kalene's room. Nicholas and Mark left the apartment in the early hours of the morning extremely intoxicated. Shortly after leaving and following a brief noisy altercation outside the apartment, Nicolas returned to the apartment to retrieve his backpack. Nicholas knocked, and Michelle let him in.

As Nicholas entered the apartment, he and Phillips got into an argument. The argument escalated; Nicholas swung at Phillips but failed to make contact. Phillips, who was significantly larger than Nicholas, then repeatedly struck Nicholas in the face with his fists and a lava lamp even after Nicholas was unconscious. Kalene called 911.

Police arrived shortly thereafter, and Nicholas was transported to the hospital. Nicholas sustained several facial injuries, including a fractured eye socket, a broken jaw, and broken teeth. After talking with Kalene, Michelle, and Phillips, police placed Phillips under arrest. The State charged Phillips with first degree assault, and the case went to trial.

---

[1] Parties except for Phillips are referred to using their first names to avoid confusion.

## II. TRIAL

### A. JURY SELECTION

Voir dire and jury selection occurred in open court. All for-cause challenges were made at a sidebar. Video and audio equipment recorded the entire process, including the discussion of the for-cause challenges at the trial judge's bench. But because of background noise, the recording of the sidebar could not be fully transcribed. Only small portions of the conversation were discernable.

### B. KALENE'S TESTIMONY

Kalene testified that on the evening of the incident, Nicholas and Mark were hanging out in her room and drank more than usual. They initially left around four a.m. but created a disturbance outside the apartment. Phillips, still in the apartment, grabbed an axe and followed Kalene outside. As Kalene was attempting to calm the situation, Phillips returned to the apartment.

Kalene next testified that after the disturbance outside the apartment, Nicholas returned to get his backpack from the apartment. After Nicholas knocked, Michelle unlocked the door, and Nicholas came in and searched for his backpack.

Phillips told Nicholas that he was not allowed to return to the apartment. The two then exchanged "choice words." Verbatim Report of Proceedings (VRP) at 177. Nicholas made "sparring" motions toward Phillips but did not make physical contact. VRP at 183. Phillips, still holding the axe, then approached Nicholas. Nicholas, uneasy on his feet due to intoxication, swung his fist at Phillips but missed. Phillips dropped the axe, grabbed Nicholas, and punched him two to three times in the face. Nicholas' body went limp and his eyes shut, but Phillips was still holding

up his body. Phillips then threw Nicholas' limp body into a clothes rack before dragging him over to a table. At the table, Phillips punched Nicholas three or four more times again in the face.

Concerned for Nicholas' safety, Kalene yelled at Phillips to stop. Phillips then grabbed a lava lamp and struck an unconscious Nicholas in the face with it four or five times. Kalene jumped on Phillips' back and started screaming that she was going to call 911. Phillips finally stopped.

Kalene called 911 and told the operator that her brother was in a fight, bleeding badly, and in and out of consciousness.

Kalene testified that when the police arrived, she told them that Nicholas had instigated the fight with Phillips and had swung first, but Nicholas was "barely hitting" Phillips. VRP at 242. Kalene further testified that after the police left, Michelle wiped blood off of the axe and placed it under her bed because Michelle did not want Phillips to get into trouble.

Kalene also testified regarding Phillips' Marine Corps background. She said that Phillips was a former Marine who was proud of his training. The State asked if Phillips bragged about his Marine Corps training. Defense counsel objected based on relevance. The trial court overruled the objection saying, "I'll allow a little leeway." VRP at 158. Kalene then testified that Phillips liked to brag about the training he had received, how tough he was, and that he knew how to fight.

C. NICHOLAS' TESTIMONY

Nicholas testified that he was 5'8" and weighed approximately 125 pounds. He was born HIV positive and also had a blood disorder that required he take blood thinners. Phillips knew Nicholas took blood thinners.

Nicholas had almost no recollection of the incident. He remembered returning to the apartment to get his belongings but did not remember anything after that. When he woke up at the

hospital, his mouth was cut up, he had a cut on his arm, his eye socket and upper jaw were fractured, and he had lost two teeth.

D. POLICE TESTIMONY

Officer Roy Slaven and Officer Dillon Roberts from the Kelso Police Department both responded to Kalene's 911 call.

Officer Slaven testified that when he questioned Phillips and Michelle, they both appeared calm and uninjured. His initial conversation was with Phillips with Michelle standing beside him. Phillips told the officer that Mark and Nicholas had been drinking and had gotten into a fight but did not provide details. Phillips said that he had intervened to protect Michelle. Michelle did not respond to this statement and instead stared blankly avoiding eye contact.

Officer Slaven stated that he had investigated numerous assault cases of all kinds since becoming an officer. He noted Michelle's reaction to Phillips' statement was "not normal." VRP at 274. When asked why, he explained:

> So typically if—not every circumstance, but a lot of circumstances that I'm out with, if someone is saying something where they step in to protect somebody, the other person would then chime in or make some sort of response or a head nod or agree or then would take over the conversation to explain what had happened to him, and I wasn't getting a response from her with that when I looked over to see if she was acknowledging that. I just kind of had just a stare off to the side as in [sic] she didn't have a response for that.

VRP at 274. Defense counsel objected to the testimony based on speculation, but the trial court overruled the objection. The State questioned whether Michelle's reaction was "abnormal," and Officer Slaven agreed. VRP at 274.

Officer Slaven also testified about Marine Corps training generally. Like Phillips, Officer Slaven was a former Marine and stated that part of Marine Corps training was "hand-to-hand

combat" teaching an individual to "neutralize a threat." VRP at 260. Officer Slaven compared his Marine Corps training to his police training, noting that the focus of Marine Corps training was offensive while the focus of police training was defensive. Marines, according to the officer, are trained to kill, while police officers are not. Officer Slaven also stated that Marine Corps training teaches targeting the head because of its vulnerability.

Officer Roberts testified at trial that while Officer Slaven was questioning Phillips and Michelle, he entered the apartment and spoke with Kalene who relayed her version of events. After speaking with Kalene, Officer Roberts spoke with Phillips. Officer Roberts noted inconsistencies in Phillips' statements, as well as the inconsistencies between the statements from Kalene and Phillips. Officer Roberts stated that he did not initially tell Phillips that he was aware of the use of the axe and the lava lamp. When asked why he had not confronted Phillips with this information, Officer Roberts responded, "I want[ed] to see how forthcoming he[] [was] going to be with me and try to get his side of the story first before I implant[ed] any details into his head." VRP at 321. Officer Roberts confirmed that initially Phillips made no mention of the axe or lava lamp and just stated that he and Nicholas had been in a fistfight. He described Phillips' statement as "very vague." VRP at 322.

Officer Robert then confronted Phillips with the information he had received about the axe and the lava lamp. Officer Roberts testified that Phillips was not forthcoming about the axe or the lamp. When confronted with the information about the axe, Phillips admitted that he had picked it up but denied swinging it. When confronted with the information about the lava lamp, Phillips initially acted like he did not know what the officer was talking about. But when Officer Roberts relayed specifically what Kalene had told him about the lava lamp, Phillips nodded in response.

E.  MICHELLE'S TESTIMONY

Michelle testified at trial that Phillips was 6'3" and weighed about 240 pounds.  Michelle also testified that Nicholas and Mark left the apartment highly intoxicated around 2:30 in the morning.  When Nicholas returned, he started yelling outside the apartment, calling Michelle a "piece-of-sh** mom" and Phillips a "punk b**ch."  VRP at 423.  Nicholas then "forced himself" into the apartment.  VRP at 424.  After entering, Michelle said Nicholas shoved her and then lifted his fist toward her like he was going to strike her.  Michelle moved out of the way, and Nicholas went after Phillips who had jumped up to defend her.  Phillips told Nicholas that he was not allowed to return to the apartment.  Nicholas spit on Phillips, and the two started throwing punches.  Phillips used an axe, according to Michelle, to block Nicholas.

Michelle also testified that she did not remember what happened next.  She recalled that Kalene jumped on Phillips' back trying to get him off Nicholas.  Phillips then told Kalene to call 911, and Nicholas was still conscious.  Shortly thereafter, Nicholas passed out from intoxication.  Phillips, according to Michelle, did not strike Nicholas once he was unconscious.  After the police left, Michelle wiped the axe and put it under her bed, but she denied that she had wiped it to keep Phillips from getting in trouble.

F.  CLOSING ARGUMENTS, JURY INSTRUCTIONS, AND VERDICT

In its closing argument, the State noted a lack of evidence showing that Nicholas had harmed Michelle: "There's no evidence of that.  Kalene tells you that [Nicholas] didn't raise his arm, he didn't threaten [Michelle], he didn't pushing [sic] her, he didn't shove her."  VRP at 504.  The State then reiterated that Michelle told police that Nicholas had "brushed past her" as he entered, and she had no visible signs of injury.  VRP at 504.

7

The State conceded that Nicholas confronted Phillips and started a fistfight. The State emphasized that Phillips' initial blows were not the issue in the case:

> So at this point had things ended here, we wouldn't be here, we wouldn't be talking, we would not be here because it was over and done with. But unfortunately things didn't end there. This is not the reason why you're here. This is not the question that you have to decide. The problem is things then did not stop.

VRP at 508. The State argued that the problem was that Phillips continued hitting Nicholas after he was unconscious and unable to fight back.

The State also referred to Officer Slaven's interaction with Michelle:

> [Phillips] says, you know, I had to step in to protect Michelle. There was a weird vibe or weird reaction from Michelle like she's not doing what you typically expect. She's not agreeing, she's not—that's usually how is, sure. Officer Slaven has no history with Michelle so he just knows that it's not typical.

VRP at 515.

Defense counsel's closing argument emphasized the testimony that Nicholas was conscious when Phillips continued to deliver blows, saying that Phillips was continuing to act in self-defense. Phillips' counsel did not particularly focus on Phillips acting in defense of Michelle or of his property, mentioning only in passing that Phillips could have been defending his wife. He instead focused on arguing that Phillips' use of force was proportional because he was worried about Nicholas being HIV-positive.

The trial court instructed the jury on the elements of first degree assault and that Phillips was entitled to use force in defense of himself, others, and his property. The jury found Phillips guilty of first degree assault.

### III. RECONSTRUCTION OF JURY SELECTION

About ten months after trial, the trial court learned that there were issues with the audio recording of the three-minute sidebar when the parties and the trial court discussed nine for-cause challenges. Most of the conversation was inaudible and only the occasional word or phrase could be understood. Once this was discovered, the trial judge and attorneys reviewed the trial judge's contemporaneous notes from the trial, the parties' files and notes, the transcript, and the court audio. Both attorneys filed affidavits and a joint stipulation to reconstruct the record regarding the for-cause challenges. The trial court then entered findings of fact with regard to reasons for the for-cause excusals of each of the jurors including numbers 2, 6, 7, 18, and 35.

#### A. JUROR NO. 2

The trial court excused juror 2 because the juror stated that "his religious convictions and work as a pastor did not permit him to stand in judgment of another." Clerk's Papers (CP) at 120.

The trial court made extensive contemporaneous notes about juror 2, including: "Religious conviction; would be hard to pass judgment; think will be on side of mercy; . . . not his role; others suited to judge; not saying it is not right spot for him; . . . this is not the field who [sic] chooses to practice in; majority of his effort is to peacemaking and reconciliation between men and God." CP at 93. Both parties agreed that juror 2 was dismissed because of religious convictions that prevented him from performing the duties of a juror and that there was no objection to his dismissal.

#### B. JUROR NO. 6

The trial court found that juror 6 had a scheduled arbitration the next morning and would be flying internationally that weekend. The trial court excused juror 6 because it was important

for juror 6 to be at the arbitration and there was a possibility that jury deliberations would extend to the following week.

The attorneys' affidavits supported the trial court's finding regarding the reasons for excusing the juror and reflected that Phillips did not object to the removal of juror 6. The juror's testimony in voir dire also reflected details about their scheduling conflicts. The trial court kept the following notes about juror 6: "Arbitration tomorrow in Clark County; builder lawsuit; until 3:00 pm. Amsterdam on Saturday." CP at 98.

C. JUROR NO. 7

The trial court found that juror 7 had a medical appointment the same week of trial that he had scheduled three months prior and would possibly have to wait another three months if he was not able to attend it. The trial court excused juror 7 so that he would not have to wait six months to receive care.

Counsel for the State asserted that neither the State nor defense counsel had objected to the removal of juror 7. During voir dire, juror 7 reported that his father had been falsely accused of assault, resulting in jail time and a civil suit but no conviction. Juror 7 later said he thought he could be fair but then reiterated how his father was unfairly treated by the system. Juror 7 also said he had a doctor's appointment scheduled for the week of trial that he had scheduled three months ago and that if he cancelled it, he might not be able to get in for another three months. The trial court's contemporaneous notes reflected this testimony. On the audio recording of the sidebar discussing juror 7, the trial judge can be heard saying "Friday 3pm, doctor's appointment." CP at 101.

D.  JUROR NO. 18

The trial court dismissed juror 18 because he would not be able to impartially perform the duties of a juror.  The trial court found that juror 18 stated that he had been accused of assault about a year prior.  Although the charges had been dismissed, it was not a good experience.  He indicated that he "would not be able to listen to the witnesses, not apply the law, not make a decision, believ[ed] the system [was] corrupt, and question[ed] if he would be charged with a crime if he left the courtroom."  CP at 121.  Juror 18 was excused because he would not be able to impartially perform the duties of a juror.

The State and defense counsel agreed that juror 18 was excused because he would not be able to perform his duty and that neither counsel objected to removal.  The transcript of voir dire contains the statements from juror 18 described in the trial court's findings.  The trial court's contemporaneous notes about juror 18 said: "Accused of assault; dismissed charges; think system is messed up; can't do it."  CP at 104.  In the audio recording during the discussion of juror 18, the trial court said: "assault, excuse him."  CP at 104.

E.  JUROR NO. 35

The trial court found that juror 35 was a commissioned salesman who said his ability to cover basic living costs would be jeopardized if he had to serve jury duty.  The trial court excused him on the basis of financial hardship.

Both counsel agreed juror 35 was excused because he "faced undue financial hardship that affected his ability to maintain his basic needs."  CP at 87.  The State believed that neither the State nor defense counsel objected to his removal.  Juror 35 said in voir dire that it would cause him financial difficulty to sit as a juror: "I'm a commissioned salesman, and every day that I'm

gone from work I'm missing out on opportunities. I'm fielding emails as we are waiting to come in here, so every moment gone is an opportunity lost." CP at 107. He said that serving as a juror would put at risk his ability to meet basic needs. The trial court's contemporaneous notes included: "Sales guy, missing on; interferes with basic necessities." CP at 108.[2]

Phillips appeals.

## ANALYSIS

### I. RECONSTRUCTION OF SIDEBAR

Phillips argues that the reconstruction of the sidebar regarding the for-cause challenges of jurors was inadequate, depriving him of his right to a complete record on appeal. Specifically, Phillips argues that the record does not provide the reasons for the for-cause dismissals of jurors 2, 6, 7, 18, and 35.[3] We disagree.

### A. LEGAL PRINCIPLES

Criminal defendants are entitled to a " 'record of sufficient completeness' " on appeal to ensure effective appellate review. *State v. Larson*, 62 Wn.2d 64, 66, 381 P.2d 120 (1963) (internal quotation marks omitted) (quoting *Draper v. Washington*, 372 U.S. 487, 497, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963)). However, a " 'complete verbatim transcript' is not required." *State v. Classen*, 143 Wn. App. 45, 54, 176 P.3d 582 (2008) (internal quotation marks omitted) (quoting *State v.*

---

[2] Juror 35 also discussed in voir dire the fact that he had been a victim of an assault in high school and his ability to be fair would depend on the case, and in the audio recording, the trial judge said about juror 35: "guy that got his ear cut off in high school." CP at 108. But no party believed that was the reason he was excused.

[3] Phillips also argues that there is insufficient evidence to support the trial courts findings of fact as to the reasons for the for-cause dismissals of juror number 2, 6, 7, 18, and 35. However, because we do not review a reconstruction of the record for sufficiency of the evidence, we do not address this argument.

*Tilton*, 149 Wn.2d 775, 781, 72 P.3d 735 (2003)). Alternative methods of reporting proceedings are permissible if they "allow counsel to determine which issues to raise on appeal and to 'place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise.' " *Id.* at 55 (internal quotation marks omitted) (quoting *State v. Jackson*, 87 Wn.2d 562, 565, 554 P.2d 1347 (1976)).

Under RAP 9.4, if the record is incomplete, the parties may create an agreed report of proceedings if either "the court reporter's notes or the electronic recording of the proceeding being reviewed is lost or damaged." The sufficiency of a reconstruction of the record under RAP 9.4 largely depends on the following factors: "(1) whether all or only part of the trial record is missing or reconstructed, (2) the importance of the missing portion to review the issues raised on appeal, (3) the adequacy of the reconstructed record to permit appellate review, and (4) the degree of resultant prejudice from the missing or reconstructed record, if any, to the defendant." *Id.* at 57.

B. SUFFICIENCY OF RECREATION OF RECORD

Regarding the first factor, the only portion that Phillips takes issue with is an approximately three minute[4] sidebar conversation in a two and a half day trial. Because, comparatively, this was only a very small portion of the proceedings, this factor weighs in favor of a finding of sufficient completeness.

Second, the importance of the missing record for the issues on appeal is lessened because Phillips does not actually challenge the dismissal of any of the jurors on appeal and the sidebar is only one piece of information explaining the excusals. Phillips claims that he cannot raise issues

---

[4] Although the total length of the challenges according to the clerk's minutes was ten minutes, the video of the proceedings shows that the attorneys only spent about three minutes of that time at the trial judge's bench discussing their for-cause challenges.

with regard to jury selection because the record is inadequate and he does not know what actually occurred. However, the entire voir dire was accurately recorded, only the sidebar's recording had defects. Although Phillips specifically discusses jurors 2, 6, 7, 18, and 35, he does not raise any issue or potential issue regarding their dismissals, and none are evident from the record.

Phillips only argues that the reasons given for the dismissals in the trial court's findings are speculation and unsupported by the record. However, the voir dire provides an adequate record for review to determine, in general, the reasons for excusing the jurors. The sidebar merely provides a component piece of the information about why jurors were excused. Where, as here, there are additional sources of information to provide context for the trial court proceedings, the importance of the missing record is lessened. Thus, this factor weighs in favor of a finding of sufficient completeness.

Third, regarding adequacy of the reconstructed record, the parties and the trial court reconstructed the record using audible portions of the recording, contemporaneous notes from the trial judge, notes from the parties, and the voir dire transcript. The trial court and the parties provided reasons for each for-cause dismissal. The State, defense trial counsel, and defense appellate counsel all stipulated to the portions of the voir dire transcript related to the for-cause challenges, the trial judge's notes with regards to each voir dire challenge, and the audible portions of the sidebar conversation. Additionally, trial counsel for both the State and defendant submitted affidavits regarding the sidebar. With the reconstructed record of the sidebar and the audible portions of the voir dire recording, the record is adequate to discern the general reasons each of the jurors was excused. Juror 2 was dismissed based on his conviction that it was not his place to judge others; juror 6 was dismissed because of a conflicting arbitration and travel plans; juror 7

was dismissed because of a medical appointment; juror 18 was dismissed because he was unable to impartially perform the duties of a juror; and juror 35 was dismissed because of financial hardship. Thus, this factor weighs in favor of a finding of sufficient completeness.

Regarding the fourth factor, Phillips argues that he was prejudiced because he does not actually know what happened at the sidebar, thus, he cannot make arguments related to the for-cause challenges. We reject this argument. What occurred can be ascertained from the record, including the audible portions of voir dire, the stipulations of the parties, and the trial court judge's notes. Because the record is sufficiently complete for Phillips to review for error, there is no prejudice. Thus, this factor weighs in favor of a finding of sufficient completeness.

Consideration of the four factors shows that the record has been adequately reconstructed and is sufficient to allow appellate counsel to determine what issues to raise on appeal. Thus, we find that Phillips has not been deprived of his right to a complete record on appeal.

## II. RIGHT TO A PUBLIC TRIAL

Phillips argues that the rulings on the for-cause challenges "at an unrecorded sidebar that was never memorialized" constituted a courtroom closure and violated his right to a public trial. Br. of Appellant at 21 (boldface omitted). We disagree.

The Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant's right to a public trial. *State v. Strode*, 167 Wn.2d 222, 225-26, 217 P.3d 310 (2009); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Whether the defendant's right to a public trial has been violated is a question of law reviewed de novo. *State v. Whitlock*, 188 Wn.2d 511, 520, 396 P.3d 310 (2017).

15

We engage in a three-part inquiry to determine whether the right to a public trial has been violated, asking: " '(1) Does the proceeding at issue implicate the public trial right? (2) If so, was the proceeding closed? And (3) if so, was the closure justified?' " *Id.* (quoting *State v. Smith*, 181 Wn.2d 508, 521, 334 P.3d 1049 (2014)). The appellant carries the burden on the first two questions, and the proponent of the closure carries the burden on the third. *State v. Love*, 183 Wn.2d 598, 605, 354 P.3d 841 (2015).

Here, regarding the first question, the jury selection process implicates the public trial right. *Id.* at 605-06. Proper sidebars, however, do not. "To avoid implicating the public trial right, sidebars must be limited in content to their traditional subject areas, should be done only to avoid disrupting the flow of trial, and must either be on the record or be promptly memorialized in the record." *Smith*, 181 Wn.2d at 516, n.10.

In this case, Phillips argues that the sidebar in question implicated the public trial right because it was neither on the record nor promptly memorialized in the record. We disagree. Although its quality was compromised, there was in a fact a record of the sidebar discussion. Once these quality issues were uncovered, the trial court promptly took action to reconstruct the record as discussed above. Because the sidebar was proper, Phillips' public trial right was not implicated.[5]

III. POLICE TESTIMONY

Phillips next argues that law enforcement testimony violated his right to a trial by jury and constituted prosecutorial misconduct. While testifying about his investigation, Officer Slaven said

---

[5] Phillips also argues that the sidebar was improper under *State v. Whitlock*. However, *Whitlock* is distinguishable because it involved a sidebar that occurred in chambers. 188 Wn.2d 511, 513, 396 P.3d 310 (2017). In this case, the sidebar occurred in open court like the sidebars discussed in *Love* and *Smith*. Therefore, *Whitlock* does not apply.

that he had conducted numerous investigations and that Michelle's "blank stare" reaction to Phillips' statements was "not normal." VRP at 274. Officer Slaven explained that when someone comes to another's defense, the individual being defended would normally be more engaged with the conversation. Phillips objected to the testimony, but the trial court overruled the objection.

Officer Roberts subsequently testified that he initially went into the apartment and spoke with Kalene. After getting her side of the story, he came out to question Phillips. Officer Roberts testified that Phillips' statements were inconsistent with what he had learned from Kalene.

Phillips argues this testimony violated his right to a trial by jury by offering improper opinions on witness credibility.[6] He also maintains that it was prosecutorial misconduct to elicit and comment on the testimony. We disagree.

A. IMPROPER OPINION ON WITNESS CREDIBILITY AFFECTING RIGHT TO A TRIAL BY JURY

Where issues on evidentiary rulings and constitutional issues are intertwined, we review the evidentiary rulings for an abuse of discretion and the constitutional issues de novo. *State v. Arndt*, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019), *petition for cert. denied*. "A trial court abuses its discretion only if no reasonable person would adopt the view espoused by the trial court." *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). Where reasonable minds could differ as to an outcome, the trial court has not abused its discretion. *Id.* Even where the trial court has abused its discretion in improperly admitting evidence of credibility, we will not overturn the decision where the error was harmless. *State v. Notaro*, 161 Wn. App. 654, 670, 255 P.3d 774 (2011).

---

[6] In its response, the State argues that Phillips' and Michelle's statements to law enforcement were voluntary. Phillips does not raise any issue related to the voluntary nature of the statements in his assignments of error, therefore, we do not consider these arguments.

A defendant has a federal and state constitutional right to trial by jury, which includes the right to have questions of fact decided by the jury. U.S. CONST. amend VII; WASH. CONST. art I §§ 21, 22; *State v. Montgomery*, 163 Wn.2d 577, 590, 183 P.3d 267 (2008). The right to trial by jury prohibits a witness from directly giving or implying their opinion as to a defendant's guilt and commenting on the credibility of witnesses. *State v. Smiley*, 195 Wn. App. 185, 189-90, 379 P.3d 149 (2016). Opinion testimony regarding the guilt of the defendant or the veracity of witnesses can be particularly damaging when it comes from law enforcement because such testimony "has 'an aura of special reliability and trustworthiness.'" *State v. Hawkins*, 14 Wn. App. 2d 182, 189, 469 P.3d 1179 (2020) (quoting *Demery*, 144 Wn.2d at 763).

"Testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence, is not improper opinion testimony." *Smiley*, 195 Wn. App. at 190. Typically, opinion testimony regarding an individual's reaction is admissible. *State v. Day*, 51 Wn. App. 544, 552, 754 P.2d 1021 (1988).

Here, Officer Slaven's opinion testimony regarding Michelle's reaction and whether it was typical for people in her situation was not a direct comment on either Phillips' guilt or Michelle's veracity and, therefore, was not improper. *See Id.* As a result, the trial court did not abuse its discretion by admitting this testimony over Phillips' objection.

Phillips' argument that Officer Roberts was commenting on his credibility when the officer said Phillips' story was inconsistent mischaracterizes the officer's testimony by taking the statements out of context. Officer Roberts' testimony that Phillips' statements were inconsistent with what he learned from Kalene was not a statement as to credibility. Officer Roberts simply

stated that he heard two different stories from Kalene and Phillips. He did not directly testify regarding his belief as to the truth or falsity of either story.

Officer Roberts also testified that he did not initially confront Phillips with Kalene's statements about the axe and lava lamp because he wanted to see if Phillips would be "forthcoming." RP at 321, 343. When asked if Phillips was forthcoming, Officer Roberts said that he was not. "Forthcoming" is not a synonym for honest. Rather, the word conveys evasiveness. Thus, Officer Roberts' testimony that Phillips was not forthcoming is well short of a direct comment on Phillips' credibility.

Phillips relies on *State v. Jones* and *State v. Johnson* to support his arguments, but this reliance is misplaced. 117 Wn. App. 89, 68 P.3d 1153 (2003); 152 Wn. App. 924, 219 P.3d 958 (2009). In *Jones*, the court found that testimony from the police officer that he did not believe the defendant was improper testimony as to credibility. 117 Wn. App. at 91-92. In *Johnson*, the court found that a statement by the defendant's wife indicating that she believed the victim's allegations against her husband was impermissible lay witness opinion testimony. 152 Wn. App. at 932-34. In both *Jones* and *Johnson*, the testimony at issue directly commented on the credibility of the defendant or witnesses. As explained above, none of the testimony challenged here constituted opinions about credibility.

Because the statements of Officer Slaven and Officer Roberts did not improperly comment on credibility, we find that the trial court did not abuse its discretion in admitting them and Phillips was not deprived of his right to trial by jury.

B. PROSECUTORIAL MISCONDUCT

Phillips also maintains that the State committed misconduct by eliciting testimony on his and Michelle's credibility from Officer Slaven and Officer Roberts and commenting on it in its closing argument.

In a prosecutorial misconduct claim, the defendant bears the burden of showing that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). As explained above, the testimonies of both Officer Slaven and Officer Roberts were not inadmissible statements of credibility. Thus, Phillips fails to meet his burden to show the State committed misconduct when it elicited this testimony or when it reminded the jury of this testimony in closing argument.

## IV. MARINE CORPS EVIDENCE

Phillips argues that eliciting testimony regarding his Marine Corps training was prosecutorial misconduct because the testimony was irrelevant and because the State was engaged in impermissible profiling. We disagree.

Multiple witnesses testified that Phillips had been a Marine. Kalene, who was the first witness, was asked about whether Phillips had bragged about his military training. Phillips' counsel objected a single time on the basis of relevance. This objection was overruled by the trial court judge who said, "I'll allow a little leeway." VRP at 158.

Later, Nicholas testified that Phillips was a former Marine who bragged about his training. Defense counsel did not object to this testimony.

Officer Slaven, a former Marine, also testified about the Marine Corps saying that part of the training was "hand-to-hand combat" so that an individual can "neutralize a threat." VRP at

260. Officer Slaven testified that Marine Corps training includes teaching on how to hurt and kill people in hand-to-hand combat. Officer Slaven compared this training to the training he received to become a police officer, noting that the focus of Marine Corps training is offensive while the focus of police training is defensive. Officer Slaven said that Marine Corps training teaches targeting of the head because of its vulnerability. Defense counsel did not object to this testimony.

Where a defendant has failed to object to the State's conduct at trial, the defendant has waived any error involving prosecutorial misconduct "unless the [State's] misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. Evidence is relevant if it has the tendency to make any fact of consequence more or less probable. ER 401.

" 'Profile testimony' identifies a person as a member of a group more likely to commit a crime." *State v. Crow*, 8 Wn. App. 2d 480, 495, 438 P.3d 541 (2019) (quoting *State v. Avendano-Lopez*, 79 Wn. App. 706, 710, 904 P.2d 324 (1995)). "Profile evidence cannot be used as substantive proof of guilt because of the risk that a defendant will be convicted not for what he did but for what others are doing." *Id.* at 496. Profile testimony implicates ER 403 and ER 404(a). *Id.* at 495-96.

Phillips was charged with the crime of assault in the first degree. "A person is guilty of assault in the first degree if he or she, *with intent to inflict great bodily harm*: (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; or . . . (d) Assaults another and inflicts great bodily harm." RCW 9A.36.011(1) (emphasis added). The jury instructions required the State prove beyond a reasonable doubt "[t]hat the defendant acted with intent to inflict great bodily harm." CP at 26. The instructions explained

what great bodily harm entailed: "bodily injury that creates a probability of death, or that causes significant serious permanent disfigurement, or that causes significant permanent loss or impairment of the function of any bodily part or organ." CP at 24. The jury was also instructed that "[t]he person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, *taking into consideration all of the facts and circumstances known to the person* at the time of and prior to the incident." CP at 32 (emphasis added).

Here, in terms of Phillips' argument about prosecutorial misconduct related to the relevance of this evidence, the State's focus on Phillips' Marine Corps background was related to the specifics of this assault. Phillips repeatedly punched and struck Nicholas' face with his fists and the lava lamp but did not target any other part of his body. Nicholas sustained several facial injuries including a fractured eye socket, a broken jaw, and broken teeth. The State argued that the Marine Corps testimony was evidence of intent because this training suggested targeting the face would cause great bodily harm. The State also highlighted the Marine Corps training to show that the use of force was disproportionate for self-defense.

In terms of Phillips' argument about prosecutorial misconduct related to impermissible profiling, he fails to point to any specific profiling-type comments from the State suggesting that Marines, in general, are more likely to commit crimes.[7]

Given the connection of Phillips' Marine Corps background to legitimate trial issues of intent and disproportionality and the absence of profiling-type comments or arguments from the

---

[7] In fact, one of the State's key witnesses was a former Marine, so any attempt by the State to profile Phillips would have resulted in the profiling of its own witness as well.

State, there has not been a showing that the State's actions were so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. Therefore, the State did not commit prosecutorial misconduct in eliciting this evidence.[8]

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. LEGAL PRINCIPLES

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Prevailing on an ineffective assistance of counsel claim requires the defendant to show: (1) deficient performance and (2) prejudiced to defendant. *Id.* at 32-33.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 33. This court engages in a strong presumption that counsel's performance was reasonable. *Id.* A defendant may overcome this presumption by showing no " 'conceivable legitimate tactic explaining counsel's performance.' " *Id.* (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

The prejudice prong requires the defendant to show "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State*

---

[8] Although Phillips ostensibly assigns general error to the admission of the Marine Corps testimony in his assignments of error, the argument in his brief for this testimony focuses on prosecutorial misconduct. We do not address assignments of error that are unsupported by argument. *State v. Corbett*, 158 Wn. App. 576, 586, 242 P.3d 52 (2010). However, even assuming Phillips' arguments include a general relevance objection in addition to prosecutorial misconduct, we point out that Phillips only objected to one question at trial related to this evidence during Kalene's testimony. With respect to this single objection, we find that there was no error under an abuse of discretion standard because it was sufficiently related to the intent element of the crime as explained above.

*v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Grier*, 171 Wn.2d at 34 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

"If a defendant centers their claim of ineffective assistance of counsel on their attorney's failure to object, then 'the defendant must show that the objection would likely have succeeded.' " *State v. Vasquez*, 198 Wn.2d 239, 248, 494 P.3d 424, 431 (2021) (quoting *Crow*, 8 Wn. App. 2d at 508). " 'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.' " *Id.* (quoting *Crow*, 8 Wn. App. 2d at 508).

B. OBJECTION TO TESTIMONY THAT WAS NOT IMPROPER

Phillips argues that his counsel was ineffective for failing to object after the initial objection to what he claims was testimony of Officer Slaven and Officer Roberts as to credibility. Phillips also argues that his counsel was ineffective for failing to object to testimony regarding his Marine Corps training on the basis that it was irrelevant and that it was improper profiling evidence under ER 403 and 404(a).

Regarding the testimony Phillips claims was related to credibility, we disagree. As discussed above, because the evidence was admissible, the objections to this testimony would likely not have succeeded.

Moreover, to the extent the relevance of the Marine Corps training was marginal, Phillips cannot show that the outcome of the proceedings would have been different had the evidence not been admitted. The State presented a significant amount of evidence against him at trial including the testimonies of Kalene, Officer Roberts, and Officer Slaven. Because there was a significant

amount of evidence presented against Phillips apart from the Marine Corps training, he is unable to establish prejudice. Therefore, we find that his counsel was not ineffective for failing to object to testimony of his Marine Corps training. Thus, we conclude that counsel was not deficient for failing to object.

C. JURY INSTRUCTIONS

Phillips argues that his counsel was ineffective for failing to propose jury instructions that would have informed the jury that he had a right to act on appearances and stand his ground in defending his wife and his property from malicious trespass. We disagree.

The trial court instructed the jury with regard to Phillips' right act in defense of himself, others, and his property:

> The use of force upon or toward the person of another is lawful when used by a person who *reasonably believes* that he is about to be injured or by someone lawfully *aiding a person who he reasonably believes is about to be injured* in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.
>
> The use of force upon or toward the person of another is also lawful *when used in preventing or attempting to prevent a malicious trespass or other malicious interference with real or personal property* lawfully in that person's possession, and when the force is not more than is necessary.

CP at 32 (emphasis added).

> A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds that he is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

CP at 35.

> It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his

ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat.

CP at 36.

"Jury instructions are sufficient if substantial evidence supports them, they allow the parties to argue their theories of the case, and, when read as a whole, they properly inform the jury of the applicable law." *State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253 (2011) (citing *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002)). "Read as a whole, the jury instructions must make the relevant legal standard manifestly apparent to the average juror." *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997).

Here, Phillips was entitled to an instruction that informed the jury he was permitted to act in defense of his wife and his property. He was also entitled to an instruction that informed the jury he was permitted to stand his ground in defense of his wife. However, as the State points out, a defendant's right to stand their ground may not apply to the defense of property. "It is not clear whether this instruction applies when a person erroneously uses force to defend against an apparent property offense. The committee is unaware of any cases that address this issue." 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 17.04, at 263 (3d ed. 2008).

The "reasonably believes" language in the instructions above informed the jury that the defendant was entitled to act on appearances and included instances where the defendant is acting in defense of himself or another. CP at 32. The instructions also stated that the use of force was permitted to protect against malicious trespass or other malicious interference with real or personal property. The trial court instructed the jury that Phillips was entitled to act in defense of himself, another, and real or personal property. This instruction, coupled with the instruction that stated that Phillips was entitled to stand his ground, informed the jury that Phillips had the right to act on

appearances and stand his ground in defense of his wife and his property. Because the jury instructions as a whole allowed Phillips to argue his theory of the case, Phillips' trial counsel was not deficient for failing to propose additional instructions.

## VI. CUMULATIVE ERROR

Phillips also argues that we should find that he was denied a fair trial because of cumulative error and reverse. However, because we find that there was no error, we reject this argument.

## VII. STATEMENT OF ADDITIONAL GROUNDS (SAG)

### A. EVIDENTIARY ISSUES

Phillips raises evidentiary issues in his SAG that were objected to below and, thus, are reviewable on appeal. Decisions of the trial court to admit evidence are reviewed for an abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). "When a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons, an abuse of discretion exists." *Id.* "Any error in a trial court's decision 'requires reversal only if, within reasonable probabilities, it materially affected the outcome of the trial.' " *State v. Barry*, 184 Wn. App. 790, 802, 339 P.3d 200 (2014) (internal quotation marks omitted) (quoting *State v. Beadle*, 173 Wn.2d 97, 120-21, 265 P.3d 863 (2011)).

Phillips claims that the trial court should not have allowed his stepdaughter Tonja to testify because she did not witness the incident. He claims that her testimony was hearsay. Hearsay is an out of court statement offered to prove the truth of the matter asserted. ER 801(c).

Tonja testified as a rebuttal witness for the State. Tonja testified that Phillips would talk about how proud he was of being a "tough guy" and brag that he could "take on multiple men." VRP at 458-59. The trial court overruled Phillips' hearsay objection. The trial court did not abuse

its discretion in admitting the testimony when offered by the State because, as statements of a party-opponent, it was admissible under ER 801(d)(2).[9]

Phillips claims that Kalene's testimony regarding the relationship between Nicholas and Michelle was irrelevant.[10] The threshold inquiry for admissibility of evidence is relevance. ER 402. Evidence is relevant if it has the tendency to make any fact of consequence more or less probable. ER 401.

Kalene testified that Nicholas used to have a good relationship with Michelle, but that changed after the altercation. Although Kalene's testimony is arguably relevant as to potential witness bias, even if it was not relevant, the testimony was so unrelated to Phillips and the charges against him, any error in admitting the testimony had no material effect on the outcome of the trial and therefore would not warrant reversal.

B. INEFFECTIVE ASSISTANCE OF COUNSEL

Phillips claims that his counsel was ineffective for failing to object to the evidence regarding his height and weight and for failing to request a mistrial because of the testimony. But in the context of an assault during which proportionality of actions taken in self-defense was at issue, evidence of Phillips' height and weight was relevant and admissible. Phillips' counsel was not deficient for failing to object or request a mistrial.

---

[9] Phillips also argues that the trial court erred in admitting testimony by Tonja about statements made by Michelle. However, this issue was not properly preserved, so we decline to address it. RAP 2.5(a).

[10] Phillips also claims that Kalene's testimony regarding the relationship between her, her mother, and her other siblings was irrelevant. However, this issue was not properly preserved, so we decline to address it. RAP 2.5(a).

Phillips also claims that the State committed misconduct, and his own counsel was ineffective, for failing to ensure that witnesses were not improperly texting in the courtroom. Defendants may ask for a mistrial for prosecutorial misconduct where it "affirmatively appears that a substantial right of the defendant was materially affected." CrR 7.5(a)(2).

Phillips claims that Jeannine Hajek, described as a possible witness for the State, was improperly using her phone during his trial to communicate with other witnesses. When the issue was brought to its attention, the trial court questioned Hajek and determined she was credible when she said she was not communicating with witnesses. Based on this, the trial court determined that there had not been improper communication with witnesses and moved forward with the trial. Ultimately, Jeannine was not called as a witness by either party. Because we do not disturb credibility determinations and the record does not show that any substantial right of the defendant was materially affected, we find that defense counsel was not ineffective for failing to request a mistrial.

## C. UNREVIEWABLE MATTERS

Phillips makes several additional claims in his SAG. We hold that each of these assigned errors fails.

Appellate courts do not review every issue brought before them. Arguments raised for the first time on appeal are typically not addressed. RAP 2.5(a). We decline to review Phillips' claim that the police unlawfully obtained the axe and lava lamp because it was not preserved below.

"Credibility determinations are reserved for the trier of fact, and an appellate court 'must defer to the [trier of fact] on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence.' " *State v. Rafay*, 168 Wn. App. 734, 843, 285 P.3d 83 (2012)

No. 53451-7-II

(alteration in original) (quoting *State v. Liden*, 183 Wn. App. 110, 117, 156 P.3d 259 (2007)). We decline to review the following arguments because they challenge credibility determinations: Tonja Hajek's testimony was false and Kalene Edwards' written statement to police was false.

Arguments that involve facts and evidence not in the record are more properly raised in a personal restraint petition. *See* RAP 16.4. We decline to review the following arguments because they involve facts and evidence not in the record: claim that the lava lamp was tampered with and that his attorney was ineffective for failing to object to its presentment at trial and claim that Phillips was kept from testifying by threat of blackmail from the State.

CONCLUSION

In conclusion, we reject each of Phillips' assignments of error and affirm his conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

LEE, C.J.

WORSWICK, J.

30